David BUSBY, Appellant,

v.

William C. HOLMAN, Warden, Kilby Prison, Appellee.

No. 22166.

United States Court of Appeals Fifth Circuit.

Jan. 31, 1966.

Rives, Circuit Judge, dissented.

13. See footnote 11, supra.

Thomas S. Lawson, Jr., David Busby, Montgomery, Ala., for appellant.

Richmond Flowers, Atty. Gen., John C. Tyson, III, Asst. Atty. Gen., Montgomery, Ala., for appellee.

Before MARIS,* RIVES and BELL, Circuit Judges.

MARIS, Circuit Judge:

The appellant, David Busby, is presently serving a sentence of life imprisonment imposed upon him in 1956 in the Circuit Court of Walker County, Alabama, following his plea of guilty to a charge of rape. In 1964 he filed a petition for a writ of habeas corpus in the District Court for the Middle District of Alabama claiming that he was incarcerated in violation of his constitutional rights in that his guilty plea was coerced by State officers and that he was denied the effective assistance of counsel. The district court held an evidentiary hearing. On the evidence adduced at the hearing, the district court found the facts to be as follows:

Early in 1956 the appellant was returned from Michigan to the State of Alabama to stand trial for charges of rape and robbery. While thus returning in the custody of two deputy sheriffs from Walker County, Alabama, the appellant in casual conversation denied his guilt of criminal attack upon the woman involved, claiming that she had consented. He was lodged in the Walker County jail at Jasper where he was interrogated by the circuit solicitor and two deputy sheriffs for approximately one hour. After the interrogation was terminated, the circuit solicitor left. Shortly thereafter, the appellant told a jailer that he desired to tell the circuit solicitor exactly what had happened in connection with the offenses with which he was charged. The circuit solicitor returned, the appellant related the facts, which were taken down by the circuit solicitor, in which appellant confessed fully his guilt of the rape and robbery charges.

Following the request of members of appellant's family, the circuit solicitor asked that appellant be committed to the State Mental Hospital at Tuscaloosa for an examination as to his sanity. V. H. Carmichael, a member of the bar, who was deceased at the time of the hearing in the district court, was appointed by the State court to represent appellant in connection with the mental examination and later he was appointed to continue representing appellant. The appellant received a mental examination, was found to be mentally competent, and was discharged from the hospital. He was arraigned and entered a plea of not guilty. Subsequent to his arraignment, his court-appointed counsel worked out an agreement with the circuit solicitor whereby the appellant would withdraw his plea of not guilty and enter a plea of guilty to the offense of rape, and the circuit solicitor would not ask for the death penalty, but instead would recommend to the court and jury that appellant receive a life sentence, and the indictment for the offense of robbery, then pending against the appellant, would be dismissed. Pursuant to this arrangement, the appellant on August 7, 1956 executed a waiver of a special venire and agreed to enter a plea of guilty to the

---

* Of the Third Circuit, sitting by designation.

charge of rape. This was done before a circuit judge of Walker County. On August 20, 1956, in open court, the appellant withdrew his plea of not guilty and entered a plea of guilty. In accordance with the procedure required under Alabama law, testimony was taken before a jury to establish a prima facie case, the recommendation of the circuit solicitor was made known to the judge and the jury, following that recommendation, fixed appellant's punishment as imprisonment for life. Pursuant to the agreement, the robbery charge was dismissed by the court.

The district court found that the agreement preceding appellant's guilty plea was made with his full knowledge, understanding and consent, and that the circuit judge of Walker County, before whom the plea was entered, had interrogated the appellant as to his willingness to follow such a procedure and was convinced, after this interrogation, that appellant was acting voluntarily, intelligently and with full knowledge of the consequences. The district court further found that appellant's confession was not coerced by threats or mistreatment but on the contrary that the circuit solicitor had specifically advised appellant that he was not required to make any statement concerning the matter and that at no time prior to or during his interrogation did the appellant request an attorney. Concluding that there had been no violation of the appellant's constitutional rights and that he had been accorded competent and effective assistance of counsel, the district court entered an order dismissing the petition for a writ of habeas corpus. Busby v. Holman, D.C.Ala.1964, 237 F.Supp. 271. This appeal followed.

■ In this court the appellant first argues that his confession was illegally obtained because it was coerced and because he was not accorded the assistance of counsel at the time it was given. He asserts that by reason of these alleged violations of his constitutional rights his subsequent conviction on his plea of guilty was invalid. There is no merit in this contention, even if we assume that the appellant's confession was not voluntary [1] and even if we assume further that he was required to be furnished with counsel when he was being interrogated even though he did not ask for such assistance.[2] For the confession was not offered in evidence in view of the fact that the appellant pleaded guilty and the question of its legality is relevant in the present proceedings only to the extent that it may have affected the voluntary character of the appellant's plea. It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all non-jurisdictional defects in the prior proceedings against him.[3] The judgment and sen-

---

1. The district court found that the confession was voluntary, however.

2. This had not been recognized as a constitutional right in 1956 and indeed has not yet been so recognized by the Supreme Court. See Crooker v. California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448; Cicenia v. LaGay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523, and compare Lee v. United States, 5 Cir. 1963, 322 F.2d 770, with U.S. ex rel. Townsend v. Ogilvie, 7 Cir. 1964, 334 F.2d 837. See also Long v. United States, D.C.Cir. 1964, 338 F.2d 549.

3. United States v. McMann, 2 Cir. 1965, 349 F.2d 1018; U.S. ex rel. Maisenhelder v. Rundel, 3 Cir. 1965, 349 F.2d 592; U.S. ex rel. Boucher v. Reincke, 2 Cir. 1965, 341 F.2d 977, 980; Harris v. United States, 9 Cir. 1964, 338 F.2d 75, 80; Mahler v. United States, 10 Cir. 1964, 333 F.2d 472, 474; U.S. ex rel. Staples v. Pate, 7 Cir. 1964, 332 F.2d 531; United States v. Spada, 2 Cir. 1964, 331 F.2d 995, 996; Hoffman v. United States, 9

tence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made.

This brings us to the second argument made in support of this appeal, namely, that the district court erred in concluding that the appellant's guilty plea was voluntarily and understandingly made.

■ It is well settled that a conviction, whether in a state or federal court, which is based upon an involuntary or coerced plea of guilty, whether it be unfairly obtained or given through ignorance, fear or inadvertence, is invalid as inconsistent with due process of law.[4] As Judge Weinfeld said in United States v. Tateo, D.C.N.Y.1963, 214 F.Supp. 560, 565:

"A defendant has a fundamental right to stand trial and to require the Government to establish the charges against him in accordance with substantive and procedural due process requirements of the Federal Constitution. A defendant may, of course, obviate the required proof of his guilt by a plea of guilty, which has the conclusive force of a jury's verdict of guilty. However, an accused's plea may be accepted only if it is made voluntarily and knowingly. And if it appears. that a guilty plea is the product of coercion, either

mental or physical, or was 'unfairly obtained or given through ignorance, fear or inadvertence,' it must be vacated as void since it is violative of constitutional safeguards. A conviction which rests upon a coerced plea of guilty, no less than one which rests upon a coerced confession, is inconsistent with due process of law.

The issue of whether the guilty plea was in fact voluntary or the product of mental coercion cannot be determined with mathematical precision. Of necessity we deal in probabilities in deciding whether the defendant, at the time he pled guilty, had that free will essential to a reasoned choice either to continue with the trial or to enter a plea of guilty. Its determination involves an evaluation of psychological factors and elements that may be reasonably calculated to influence the human mind. And while probing the human mind is beyond the ken of the average layman and indeed that of the average judge, the issue of the state of a man's mind is to be decided by the trier of the fact, whether court or jury, just as any other fact issue— the reasonable inferences to be drawn from all the surrounding facts and circumstances."

The appellant's contention in this regard essentially is that his plea of guilty was influenced by his knowledge of the fact that he had made a confession which he assumed could be used against him at the trial, and that his decision to plead guilty was, in reality, involuntary because he did not know when he made it that his confession could not have been

Cir. 1964, 327 F.2d 489; United States v. Koptik, 7 Cir. 1962, 300 F.2d 19, 22; Adkins v. United States, 8 Cir. 1962, 298 F.2d 842, 844; United States v. Miller, 2 Cir. 1961, 293 F.2d 697, 698; Thomas v. United States, 9 Cir. 1961, 290 F.2d 696; United States v. Hetherington, 7 Cir. 1960, 279 F.2d 792, 796; United States v. French, 7 Cir. 1960, 274 F.2d 297; Hall v. United States, 8 Cir. 1958, 259 F.2d 430; Edwards v. United States, 1958, 103 U.S.App.D.C. 152, 256 F.2d 707.

4. Kercheval v. United States, 1927, 274 U.S. 220, 223, 47 S.Ct. 852, 71 L.Ed. 1009; Machibroda v. United States, 1962, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473; Com. of Pennsylvania ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126; Wright v. Dickson, 9 Cir. 1964, 336 F.2d 878; United States ex rel. McGrath v. LaVallee, 2 Cir. 1963, 319 F.2d 308; Shelton v. United States, 7 Cir. 1961, 292 F.2d 346.

so used because it was obtained by co- ercion and without his having been given an opportunity to consult counsel. To this the State answers that the appellant had the advice of competent counsel in making his plea of guilty and cannot, therefore, now be heard to impugn his own act done under such advice.

In considering this contention of the appellant we must bear in mind that the constitutional requirement of ef- fective assistance of counsel does not re- quire or permit the court upon a subse- quent review to analyze counsel's mental processes in order to determine whether every conceivable avenue of evidence has been totally explored and every possible theory of defense has been pursued. United States ex rel. Boucher v. Reincke, 2 Cir. 1965, 341 F.2d 977, 981. It is not counsel who is on trial. There can be held to be a lack of the effective assist- ance of counsel only when it appears that counsel's assistance was so grossly inept as to shock the conscience of the court and make the proceedings a farce and a mockery of justice. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 669. See, also, Monroe v. Huff, 1944, 79 U.S.App. D.C. 246, 145 F.2d 249; Kinney v. Unit- ed States, 10 Cir. 1949, 177 F.2d 895, and Rushing v. Wilkinson, 5 Cir. 1959, 272 F.2d 633, 638. Judge Minton well ex- pressed the rule in United States ex rel. Feeley v. Ragen, 7 Cir. 1948, 166 F.2d 976, 980, as follows:

" * * * Whenever the court in good faith appoints or accepts the appearance of a member of the bar in good standing to represent a de- fendant, the presumption is that such counsel is competent. Other- wise, he would not be in good stand- ing at the bar and accepted by the court. The constitutional require- ments have been met as to the neces- sity for counsel. If the action of counsel in the presence of the court in the conduct of the trial reduces the trial to a travesty on justice, such conduct might be considered on the proposition that such a trial was a denial of due process. The conduct

of counsel in the trial of a case is that of only one of the officers of the court whose duty it is to see that the defendant receives a fair trial. He is only one of the actors in the drama. The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even in- competency, will not vitiate the trial unless on the whole the representa- tion is of such low caliber as to amount to no representation and to reduce the trial to a farce. * * *

Petitions challenging the compe- tency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show the representation of counsel was such as to reduce the trial to a farce or a sham. Other- wise, they should be dismissed."

As Judge Seth said in Williams v. Cox, 10 Cir. 1965, 350 F.2d 847, 849:

" * * * Although counsel con- ferred with appellant only briefly in the instant case, the record shows he was acquainted with him because of the previous appointment, and there is no indication that his repre- sentation of appellant in the case at bar was ineffective because of the brevity of consultation. No particu- lar ritual is required in advising a criminal defendant of his funda- mental rights. * * * Where, as in this case, the defendant appears in open court with his attorney who is competent to represent him and does so under circumstances fairly denot- ing that the attorney speaks for the defendant, who comprehends what is being done and its significance, and who acquiesces in counsel's statement that the defendant under- stands the charges brought against him and has been fully advised of his constitutional rights and enters a plea of guilty, such plea is valid."

In this case, during the hearing in the district court, the appellant sought to impeach his counsel's competency by

showing that he was not a sober man. The appellant testified that he thought he smelled liquor on his counsel's breath. However, all the witnesses who testified on the subject stated that his counsel had a good reputation as a competent criminal lawyer, and the district court was fully justified in so finding. Here the district court has found on ample evidence that the appellant's confession was voluntary and there has been no suggestion by the appellant that he did not truthfully state the facts in it. We cannot assume that counsel did not take these circumstances into account as well as the state of the law as it then was on the right to counsel during interrogation in determining whether to advise his client to plead guilty. Doubtless in giving that advice counsel took into account the fact which was known to him that the appellant's confession was corroborated by a statement by the prosecutrix, factually almost identical, which was in the possession of the circuit solicitor. The fact that if convicted the appellant faced the electric chair was another factor which must have been considered by counsel in advising the appellant to accede to the arrangement with the circuit solicitor by which on a plea of guilty he would escape the possibility of execution.

 However, as we have pointed out, the district court was not called upon to try the merits of the advice given by counsel to the appellant but merely to determine that counsel was not so completely inept and incompetent as to render the proceedings a farce. The district court found that the appellant was afforded the assistance of competent counsel. We are satisfied that the record amply supports that finding. Indeed the fact that the appellant is alive today may well be a testimonial to it. It follows that there is no merit in appellant's contention that his plea of guilty was not voluntarily and understandingly made because he was not properly advised by his counsel with regard to his confession.

 We come then to the final contention made here that after the confession was given the circuit solicitor threatened appellant with the electric chair, and that it was his fear of the electric chair which influenced his plea. The appellant testified to this effect in the district court. The solicitor testified that after counsel had been appointed for appellant and they were discussing the proposed agreement, the appellant learned that the solicitor was not going to press for the electric chair and appellant then became most cooperative. It is undisputed that a possible penalty for the offense of rape with which appellant was charged was death in the electric chair. The question can hardly be whether he was in fear of the electric chair, however, since any defendant facing it would have such fear, but rather whether the solicitor, in the circumstances of this case, induced the guilty plea by overcoming the appellant's ability to make a voluntary decision. We have carefully examined the record, and we conclude that the finding of the district court that the appellant was not coerced into entering a guilty plea and that he fully understood what he was doing is supported by substantial evidence.

We are grateful to Thomas S. Lawson, Jr., Esq., who, as court-appointed counsel for appellant, represented him forcefully and well in this court.

The judgment of the district court is affirmed.

RIVES, Circuit Judge (dissenting):

This prosecution began on January 9, 1956, when a warrant issued for Busby's arrest on the charge of rape. He was arrested about the middle of January and jailed in Detroit, Michigan. The Walker County, Alabama, jury returned an indictment against him on January 28. About March 13, two Walker County deputy sheriffs took Busby into their custody in Detroit and started the train ride on a day coach to Jasper, Alabama. Busby was kept handcuffed. He could not read and write, except that he could sign his name. He was not informed of

his right to remain silent or that anything he said might be used against him. In conversation with the deputies, he admitted that he had had sexual relations with the prosecutrix, but claimed that was with her consent. That information was reported to the prosecuting attorney. Shortly after Busby was jailed in Jasper, he was interrogated by the prosecuting attorney, Sheriff Bennett, and Deputy Daly. He was not then informed of his right to remain silent or of his right to consult an attorney. When the prosecuting attorney and Deputy Daly left for lunch, the Sheriff had lunch with Busby at the jail. The Sheriff testified:

> "He and I were sitting at the table there after we had finished eating, and as I recall, we were sitting there drinking a cup of coffee, maybe smoking a cigarette; Busby asked me to contact the D.A., he was ready to give him a statement." (R. 321.)

The prosecuting attorney and the deputy returned. There is no testimony that anyone advised Busby of his right to counsel. However, the prosecutor Wilson did tell him that he did not have to make a statement. Mr. Wilson testified:

> "I told David this; I said, 'Now, David, you don't have to tell me anything if you don't want to.' When he told me he wanted to tell me the whole story, I said, 'You don't have to tell me anything, but if you tell me anything, tell me the truth, and I am going to write it down. Now, if you are not going to tell me the truth, don't tell me anything, because I am going to write down everything you say'; that is what I told him." (R. 349.)

Busby's plea of guilty was induced not only by his confession, but more certainly and directly by the promise of the prosecuting attorney that he would not insist on the death penalty. Prosecutor Wilson testified that he discussed settlement with Busby and his appointed counsel, and further:

> "Q. Did any of the three of you, either that morning or after lunch, say anything to him about the electric chair?
>
> "A. Yeah, the electric chair was mentioned; yes.
>
> "Q. When was it mentioned?
>
> "A. I can't remember; all I remember about the electric chair was that after he learned that I was not going to press for the electric chair, he was most cooperative, most friendly; all our relationship was strictly friendly and cooperative, and everything was in agreement and—" (R. 348.)

Mr. Wilson further testified:

> "Q. What were their statements to you with reference to settlement?
>
> "A. When he became convinced that I was not going to ask for the electric chair, he just fell all over himself to plead guilty; now, that is the best way I can describe it."

There is no official record of the judge's interview with Busby before accepting his plea of guilty. I doubt whether it is possible for any such interview to truly show that the dominant motivating cause of the plea was to confess actual guilt rather than to reap the reward of escaping death in the electric chair.

A week or so before the formal trial, Busby, his attorney, and the prosecuting attorney came before the Judge. The Judge testified:

> "Q. Did they state to you that he was entering a guilty plea, or going to, in the case?
>
> "A. That was the—yes, sir. Now, you say, 'They'; I don't know whether he did or his attorney, but the conference—
>
> "Q. He or his attorney?
>
> "A. —was for that purpose; yes, sir.
>
> "Q. And Mr. Busby was present when that conversation took place?
>
> "A. Yes, sir; he was present at the time, I think in my office, I am not positive, it could have been in

the court room; I think it was my office.

"Q. And did the two attorneys, that is, Mr. Carmichael and the Solicitor, Mr. Wilson, indicate that they had reached an agreement in the case?

"A. Yes, sir.

"Q. Do you recall the nature of that agreement, Judge?

"A. The nature of agreement was that he would enter a plea of guilt to the charge of rape, and that he would agree to take a life sentence, and I specifically asked him if he entered into that agreement, and he said, 'Yes.'

"Q. You asked him independently and of his own free will?

"A. Yes, sir.

"Q. Did he appear to you to understand exactly what you were saying when you discussed that with him?

"A. Yes, sir.

"Q. And he was there with his attorney and the Solicitor?

"A. Yes, sir.

"Q. And despite the two attorneys' statements, you asked him of his own—

"A. That's right.

"Q. —knowledge?

"A. I asked him specifically; as a matter of fact, I make a practice of that." (R. 276–277.)

When the case came on for trial on August 20, 1956, the proceedings in court (R. pp. 135, et seq.) show no further effort to ascertain that the plea of guilty was truly voluntary. So far as I have found in the record, the Judge did no more than ascertain in the quoted conference that Busby had agreed to plead guilty to get a life sentence instead of death.

For reasons stated in my dissent in Grant Cooper v. Holman, 5 Cir., 356 F.2d 82, it seems to me that a judgment of conviction and sentence of life imprisonment based on such a plea cannot be sustained. I therefore respectfully dissent.