Philip G. YATES, Petitioner,

v.

C. E. BREAZEALE, Superintendent of Mississippi State Penitentiary, Parchman, Mississippi, Respondent.

Civ. A. No. GC662.

United States District Court
N. D. Mississippi,
Greenville Division.

March 24, 1967.

Alvin J. Bronstein, Lawyers Constitutional Defense Committee, Jackson, Miss., for petitioner.

G. Garland Lyell, Jr., Asst. Atty. Gen. of Mississippi, Jackson, Miss., for respondent.

1. 28 U.S.C. § 2254.

2. Miss.Code Ann. § 2217 (1956).
Every person who shall be convicted of murder shall suffer death, unless the jury rendering the verdict shall fix the punishment at imprisonment in the

### OPINION OF THE COURT

CLAYTON, Chief Judge.

The petition for habeas corpus of Philip G. Yates, who is a prisoner in the penitentiary under a death sentence imposed by a Mississippi court, is now before this court for the second time. Upon its first consideration here, this court abstained for a period of four months to permit exhaustion of state remedies by petitioner as is required by the habeas statute.[1] Yates v. Breazeale, 255 F.Supp. 820 (D.C.1966).

Petitioner has now made a proper showing in this court, as was permitted under the former disposition here, that he has now exhausted his state post conviction procedures without success. His application for leave to file a petition for writ of error coram nobis in the trial court was denied by the Supreme Court of Mississippi. Yates v. State, Miss., 189 So.2d 917. His Suggestion of Error was afterward denied by that court without opinion.

Petitioner entered a plea of guilty to a murder indictment, and the question of what punishment would be imposed was tried to a jury as is required by state law.[2] The verdict and the sentence imposed thereon were for infliction of the death penalty. That case was reversed by the Supreme Court of Mississippi on the single ground that the trial court should have sustained defendant's motion for a continuance which would have permitted counsel to properly prepare petitioner's case, especially with respect to medical records bearing on his mental condition which were made during his brief service in the Air Force. Yates v. State, 251 Miss. 376, 169 So.2d 792 (1964).

Again the question of what punishment would be imposed was tried to a jury on

penitentiary for the life of the convict; or unless the jury shall certify its disagreement as to the punishment as provided by section 1293 [Code of 1930; § 2536, Code of 1942] in which case the court shall fix the punishment at imprisonment for life.

petitioner's then newly reaffirmed plea of guilty. The verdict was for the death penalty. On appeal the Supreme Court of Mississippi affirmed. Yates v. State, 253 Miss. 424, 175 So.2d 617 (1965). Petition for certiorari to the Supreme Court of the United States was denied. Yates v. Mississippi, 382 U.S. 931, 86 S.Ct. 321, 15 L.Ed.2d 342 (1965).

The first jury verdict was returned on February 28, 1964. The second death penalty jury verdict was on March 1, 1965. In between those dates the Supreme Court of the United States decided Escobedo v. State of Illinois[3] on June 22, 1964. That court since has also decided Miranda v. State of Arizona[4] (June 13, 1966) and Johnson v. State of New Jersey[5] (June 20, 1966). Petitioner relies heavily on Escobedo to present his claims here, which are in essence:

> *First:* The state had no case absent confessions by Yates and the fruits thereof which included directions by Yates to the body of the murdered man, and such confessions were not admissible under *Escobedo* because they came from interrogation when Yates was in custody without counsel and without any prior advice to him as to his right to counsel or his right to remain silent.

> *Second:* That both pleas of guilty were prompted by a belief on the part of Yates and his appointed counsel that the confession and its fruits were admissible (when, as he now claims, they were not) and that thus such pleas are insufficient to sustain a conviction.

> *Third:* That at the time when said pleas of guilty were entered, Yates had the mistaken belief that the death penalty could not be imposed on such a plea.

3. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

4. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694.

5. 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

> *Fourth:* That it was constitutionally impermissible for the trial court to accept Yates' second or reaffirmed plea of guilty and his waiver of the defense of insanity, since, as Yates claims, these actions were based upon a psychiatric finding that petitioner was "without psychosis" and were without a determination that Yates was competent to stand trial, to enter the plea of guilty, and to waive the issue of insanity.

### I.

*Escobedo* was decided after petitioner's first jury trial, but before the second. Miranda v. State of Arizona was decided after the second trial. In Johnson v. State of New Jersey it was held that these rulings were not to have retroactive effect. Thus, if any of them have any application here, it would be to the second trial. Having no retroactive effect, they could not in any way affect the proceedings incident to the jury trial which ended on February 28, 1964.

The transcripts of Yates' two trials are before this court.[6] The Supreme Court of Mississippi stated the facts at length on the first appeal. However, the following outline may prove helpful.

On January 27, 1964, the night operator of a service station in Lucedale, Mississippi, Jerry Gordon, was missing. On February 11, 1964, Yates was arrested in Michigan on an Alabama charge. He waived extradition and was transported to Mobile by air on February 14. En route from the airport to jail he escaped, but was recaptured in a barn on his father's property on February 15 by officers of Jackson County, Mississippi.[7] He was transported to jail in Jackson County to facilitate his return to Alabama at Mobile.

6. Additional evidence was also taken in this court.

7. Lucedale is in George County. The barn is also in that county. One of the officers transporting Yates from Michigan to Alabama was the Sheriff of George County.

That afternoon he was questioned briefly by the County Prosecuting Attorney of George County and the Chief of Police of Lucedale about the disappearance of Jerry Gordon. The George County Sheriff was also present.[8] Yates at least intimated to them that he would tell them all about Jerry Gordon, but wanted to see Reverend Buckly, his preacher, first. He also asked that he be permitted to talk to J. B. Gibson, Chief of Police of Pascagoula.

Later, when Gibson arrived, Yates asked whether Reverend Buckly had been called and was told that he had been. Gibson questioned Yates briefly (about extradition to Alabama) and then asked about Gordon. Yates, without admitting his guilt, asked what the penalty would be if he was guilty. He was told that he could get death or life imprisonment. After further conversation, Gibson testified that Yates said, "Well, I will tell you this. I killed the boy. He's in the Kirkland Pasture." And, "I will go show you where the body is at after I talk to Reverend Buckly. I want to talk to him. Will you go get him?" Gibson said that he would, and did.

Reverend George C. Buckly testified that Sheriff Howell, of George County, came to the Buckly house and said that Yates wanted to see him and that he went with the Sheriff to the jail to see him. He believed that Yates wanted to confess. At the jail he talked privately to him and Yates told him that he had killed Gordon and would go with the officers to show them where the body was hidden if he, Buckly, would go with him. He also told Yates that he wanted him to tell the officers the truth and "pay the price" and that he, Buckly, did not believe that Yates would get "anything but life by your confession, but if it means death, pay the price."

Yates went with the officers and Reverend Buckly, directing them to where Gordon's body was hidden in a lonely woods under a pile of brush and undergrowth. He also explained in detail how he had killed Gordon.

The following day he personally wrote out a complete confession which showed that he was guilty of armed robbery and kidnapping, as well as murder. This confession was typed substantially as he had written it, presented to him, and signed by him in the presence of officers.

On February 18, 1964, the grand jury of George County returned indictments against Yates, one of which charged him with murder. When he was brought before the court, counsel was assigned to him at his request. Later that same day he was arraigned, after counseling with his attorney, and in the presence of his attorney, entered a plea of guilty.

Before the court accepted this plea, the district attorney stated to the court that the State could not recommend life imprisonment, but would insist on the death penalty because of the serious nature of the crime. The trial judge then cautioned Yates as to the consequences of the plea, telling him that if he entered a plea of guilty, it would be necessary to empanel a jury to decide whether the punishment would be death in the gas chamber or life imprisonment. A recess of thirty minutes then ensued.

After the recess, the trial judge stated to Yates that he wanted to be sure the plea of guilty was free and voluntary; that if such a plea to the charge of murder was entered, it would be the court's duty to see that a fair and impartial jury was empaneled to determine the punishment and that this would be either that defendant would suffer death in the gas chamber or a sentence of life imprisonment. The court then asked Yates if he understood the statement and his answer was that he did. Then he was asked whether it was his desire, after talking to his attorney, to plead guilty to the charge of murder. His answer was that he did desire to plead guilty. The court

---

8. It is clear that the investigation with respect to Gordon had not yet reached an accusatory stage as to any suspect. It was not then known what had happened to him.

then asked the defendant about his age and education. He answered that he was 21 and had reached the eleventh grade in school.

The court then asked defense counsel whether he had advised with the defendant in private as to the consequences of the plea. Yates' attorney replied that this had been done and that he was satisfied that the defendant understood the seriousness of the plea.[9]

After further questioning of Yates to determine whether the plea was voluntary, vel non, the court found that it was voluntary and accepted it.

A special venire of jurors was summoned for February 21, 1964. But on that day defendant's counsel filed a motion for a continuance until the next term of court and a motion for psychiatric examination of Yates which was predicated upon claimed irrational behavior of Yates over a long period of time and the need to examine medical records relating to his discharge as an undesirable from the Air Force (which counsel believed would show other irrational behavior). Evidence was taken on those motions that same day.

The court ordered defendant's examination by a psychiatrist, to determine whether Yates was capable of conducting a rational defense and whether he knew the difference between right and wrong on the date of the crime. The motion for a continuance until the next term was overruled, but the term of court was extended for four weeks.

On February 25, 1964, the court received a written report from the psychiatrist stating the opinions that Yates knew right from wrong, had the ability to act on this knowledge of right from wrong, was competent and responsible,

without psychosis and had the ability to aid and assist in his own defense. This report was filed as a part of the record.

The trial was begun and completed on February 28, 1964. Eighteen witnesses testified for the State.[10] Yates and two witnesses testified in his behalf. Both the oral confession and Yates' written confession were introduced without any objection relating to the manner in which they were obtained. The testimony of Yates on that trial negatives completely the idea that his confessions were in fact the product of any coercion, force, threats, inducement, or promises on the part of anyone.

## II.

After the first appeal and reversal by the Supreme Court of Mississippi, Yates was committed to the Mississippi State Hospital at Whitfield, Mississippi, for psychiatric evaluation. He was there under observation for about five weeks. The staff report, which contains a detailed and lengthy history, was that he was "without psychosis". The record also shows that defense counsel had sought and obtained complete relevant records which were developed during Yates' brief service in the Air Force. All these reports and records are a part of the record made at the second trial.

The opinion of the Supreme Court on the second appeal[11] correctly and fully states the proceedings of February 22, 1965, and March 1, 1965, with respect to the second trial. The essence of those proceedings relevant here, is:

1) On February 22, Yates' attorney in his presence stated that Yates did not wish to change his plea of guilty; that this decision was the result of full discussions between Yates, the attorney and Yates' parents; and, that

---

9. This plea of guilty apparently was contrary to his attorney's advice. See e. g. the fourth paragraph of the opinion of the Supreme Court on the first appeal. Yates v. State, 251 Miss. 376, 169 So.2d 792 (1964).

10. One of the State's witnesses was the psychiatrist who made the aforemen-

tioned report. His testimony was consistent with his report. It was his opinion that the defendant knew right from wrong at the time of the murder, that he was then and at trial competent, without psychosis and able to assist in his own defense.

11. 253 Miss. 424, 175 So.2d 617 (1965).

it was the opinion of Yates and his parents that the plea should remain a plea of guilty.

2) On that same day the attorney stated that after a full discussion with Yates and his parents, they all emphatically stated that they did not believe the appellant to be insane and did not wish to claim a defense of insanity. The attorney also then outlined the steps taken to develop all available evidence with respect to the question of sanity, *his discussions with staff psychiatrists at the state hospital,* the lack of any evidence of psychosis, psychiatric behavior, or diagnosis on the part of Yates and the discussions with Yates and his parents which led to the decision not to plead insanity. He also stated as his own conscientious opinion that Yates' defense would be harmed by a defense of insanity. After the foregoing statements, the court asked Yates whether he had heard what was said, and he answered, "yes". The court asked then if he wished to add anything, and he replied, "No, I believe he got it all." Then he was asked whether he concurred in the statement and he replied, "yes".

3) On March 1, the case was again tried to a jury and punishment was again fixed at death.

On this second jury trial no written confession was used by the State, but the witnesses testified without objection as to Yates' oral confession. Yates again testified for himself and one other witness testified for him. Again, as at the first trial, Yates' testimony clearly showed that his confessions were in fact free and voluntary in every sense of the word. On direct examination by his attorney, the following extract from the transcript illustrates that this is so.

Q. You have admitted in open court at your first trial that you killed Jerry Gordon, is that right?

A. Right.

Q. And you have signed two written confessions to this crime? Is that right?

A. Yes, sir.

Q. Did you voluntarily confess this crime to the police?

A. Yes.

Q. Why? Why did you confess this crime to them?

A. Well, whenever—

Q. They didn't have any evidence against you?

A. I know that—it's hard to explain—but whenever I got picked up, everybody treated me so good. I had figured they was going to beat on me and all, and what I had done had already bothered me, and it was best to go ahead—didn't nobody promise me nothing, nobody beat on me or anything. Everybody was real good to me.

Q. You said it was bothering you, Sonnyboy, what do you mean by that? The fact that you had done this was bothering you?

A. Well, sir, I got two brothers, and me and my brothers use to fight a little bit whenever we was growing up and we would be pals and buddies, and that boy, I know he had brothers and had parents, and I know how my parents feel about me and I know how his feel about him.

Q. Is that the reason you confessed?

A. Yes, sir.

Q. Is it your further reason that you wanted to clear your conscience?

A. Yes, sir.

Q. Did you show these police officers where you hid the body for the same reason?

A. Right.

After the second trial, the aforementioned appeal to the Supreme Court of Mississippi, petition for certiorari to the Supreme Court of the United States, the petition for habeas corpus, original consideration here and exhaustion of post

**366**

conviction proceedings in state court then ensued.

### III.

█ It needs emphasizing that the trial court *was at no time concerned with the question of guilt.* Guilt had been established by the plea of guilty entered by Yates. Thus the court was concerned only with the question of punishment, which in the circumstances of this case was for determination by a jury. Footnote 2, supra. And, in such a situation it was necessary to place before the jury "the material circumstances of the crime * * * with such fullness that the jury will be well advised on the issue whether they should adjudge the death sentence." Dickerson v. State, 202 Miss. 804, 32 So.2d 881 (1947).

█ The guilt of Yates was, perhaps, conclusively established on February 18, 1964, when his plea of guilty was entered and accepted.[12] The record more than adequately demonstrates that this plea was voluntarily and understandingly entered. Moreover, Yates voluntarily took the stand at the first trial as a witness in his own behalf and testified in great detail about his commission of this terrible crime. Additionally, it needs repeating that there was not a single objection bottomed on how they had been obtained to the introduction of these confessions.[13]

█ *Escobedo* had not yet been decided and since it is not retroactive it could not apply to these proceedings at the first trial. Thus, the record made then could have been used and introduced for consideration by the jury at the second trial.[14] The fact that Yates had entered a plea of guilty at the first trial could have been used at the second trial— if that had been necessary. Sykes v. State, 157 Miss. 600, 128 So. 753 (1930)

and 23 C.J.S. Criminal Law § 830. All of the Yates testimony at the first trial could have been used at the second trial, as a part of its case in chief, if the State had wished so to proceed. Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108 (1959); United States v. Grunewald, 164 F.Supp. 644 (D.C.N.Y. 1958); Steele v. State, 76 Miss. 387, 24 So. 910 (1899) and 22 A and 23 C.J.S. Criminal Law §§ 655a, 830 & 892(b).

[6] Moreover, if in any way it could be said that the confessions might not have been admissible over objection at the first trial, this in no way vitiates the plea of guilty entered by Yates, which was entered voluntarily after advice of counsel. The cases which so hold are legion. See e. g. Busby v. Holman, 356 F.2d 75 (5th Cir. 1966) and the many cases cited in footnote 3 to the opinion in that case.

Among other things, the court, in *Busby,* said:

It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all non-jurisdictional defects in the prior proceedings against him. The judgment and sentence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor *which has*

---

**12.** The question of his competency is dealt with later. At this point it is assumed, arguendo, that he was competent.

**13.** There were repeated objections to the confessions and other evidence which were predicated on the defense theory that the court was required to impose a life sen-

tence without a jury trial and that the confessions were prejudicial.

**14.** This would have been so even if Yates, before the second trial, had moved successfully to withdraw his plea of guilty and to enter a plea of not guilty.

*been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made.*

(Emphasis added.)

■■ It thus seems clear that on the question of *guilt alone,* it is irrelevant whether the confessions were admissible or not at either or both of the trials. Guilt was established by the pleas of guilty.

Furthermore, even if it could be said in any way that the principles announced in *Escobedo, Miranda,* or *Johnson* applied to the second trial, reliance thereon would have been ineffective in view of the record made at the first trial. Hence, it is of no consequence whether, vel non, the attorney for Yates then knew of *Escobedo.* The aforementioned *First* and *Second* claims advanced by petitioner for relief are unavailing.

### IV.

■ The claim that Yates believed that the death penalty could not be imposed on a plea of guilty is wholly without merit. It would be enough to say that this is demonstrated by the fact that the death penalty was fixed by the jury at the first trial and the judge, in accordance with that verdict, so sentenced Yates! And, *at the second trial,* Yates reaffirmed that plea of guilty after, it must be noted, having been under a sentence of death for a period of nine and one-half months. It would be incredible to suppose that he did not know that the death penalty could be imposed on a plea of guilty. In addition, the record is filled with instances where the careful judge made it clear to Yates that the death penalty could be imposed and where counsel reported to the court that Yates had been so advised.

### V.

■ Moreover, petitioner's *Fourth* claim finds little support in the record, which leaves little, if any, doubt as to the competency of Yates at the time of the murder and at the time of the trials. The claim that the court had only a diagnosis that Yates was "without psychosis" at the time of the second trial looks at the record through too narrow a slot. In addition to the written report from the psychiatric staff at a state hospital of a lengthy period of observation and examination, from which the diagnosis of "without psychosis" came, the court had available for consideration at least the following: the psychiatric examination of petitioner before the first trial; the written report of that examination; the testimony of this competent psychiatrist at the first trial (footnote 10, supra); the Air Force records; the conferences between counsel for Yates with the psychiatric staff where petitioner was examined over a period of about five weeks;[15] the opinions of Yates' parents; the opinion of Yates; the opinion of petitioner's attorney;[16] the testimony of Yates as a witness at both trials, and the many other opportunities for the judge to personally observe Yates. A simple listing of the foregoing affords ample justification for the court's action at the second trial in accepting the reaffirmed plea of guilty by Yates and permitting it to stand.

### VI.

The authorities relied on by petitioner here have been carefully considered. All are distinguishable on their facts. They will not serve here to require this court to give petitioner the relief he seeks.

An order will be entered denying the prayer of the petition, but it will con- •

---

15. It must be assumed that these conferences enlarged considerably on the concise diagnosis at the end of their written report. It must also be assumed that counsel was aware of applicable law with respect to an "insanity defense" in Mississippi, especially in light of the exam-

ination as a witness and the testimony of the psychiatrist at the first trial.

16. His statement to the court was unequivocal that no evidence was available which would support an "insanity" defense.

tinue the previously ordered stay of execution in effect for the period of time within which an appeal may be perfected and for the pendency of such an appeal, if taken.