**Walter Lee RHODES**

v.

**Wingate WHITE, Warden, Louisiana State Penitentiary.**

**Misc. No. 964.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Feb. 26, 1968.

Jerry J. McKernan, Baton Rouge, La., for petitioner.

Jack P. F. Gremillion, Atty. Gen., for State of Louisiana, Teddy W. Airhart, Jr., Asst. Atty. Gen., Baton Rouge, La., for respondent.

WEST, Chief Judge:

Petitioner, Walter Lee Rhodes, is presently serving a fifteen year sentence in Louisiana State Penitentiary for armed robbery. By bill of information filed on November 16, 1965, petitioner and two others were charged with robbery while armed with a dangerous weapon, to-wit: a revolver, to which charge petitioner originally pleaded not guilty. On December 14, 1965, he withdrew his former plea of not guilty and entered instead a plea of guilty. He was then sentenced to serve fifteen years in Louisiana State Penitentiary. He now applies to this Court for the issuance of a writ of habeas corpus contending that (1) he was the victim of an illegal search and seizure, (2) he was not advised of his right to counsel, and (3) he was forced to plead guilty under "extreme psychological coercion."

Petitioner was given a full evidentiary hearing before this Court, at which hearing he had the assistance of a court-appointed attorney. After reviewing the State Court proceedings, and after hearing the evidence adduced at this hearing, the Court concludes that there is no merit to petitioner's contentions.

After the robbery was committed, one suspect was arrested at the scene, and from this suspect the police obtained the name of petitioner as a participant in the crime. Petitioner was arrested at about 8:30 p. m. on November 1, 1965, while at the home of his mother-in-law at 914 St. Louis Street in the City of New Orleans. He had been in bed for about a half hour when several plain clothes policemen came to the house. Petitioner's mother-in-law admitted them into the house after they identified themselves and asked if petitioner was there. Petitioner's sister, who was in the house, went upstairs and awakened petitioner and told him that the police were there asking for him. When petitioner appeared downstairs he was immediately placed under arrest for armed robbery. The police then asked him if he had a gun and he answered in the negative.

They then asked his mother-in-law if she had a gun and she stated that she did. She voluntarily went to get her gun but it was not where she had left it. She asked petitioner if he knew where it was and he replied that he did not. The police then asked petitioner's mother-in-law if they could search the house for the gun and she invited them to do so. Just as the police began their search, petitioner voluntarily told them where it was and led them to it. It was in the room being temporarily occupied by petitioner, and a check of the gun revealed that three rounds had apparently been fired from the gun. Petitioner was then taken to the police station and booked on a charge of armed robbery. He was allowed to phone his wife and when he did he asked her to employ Mr. Matthew S. Braniff, Attorney, to represent him. Mr. Braniff, now Judge Braniff of the Criminal District Court for the Parish of Orleans, Louisiana, had represented petitioner on at least two prior occasions. While several days may have elapsed between the time of his arrest and the time petitioner first consulted personally with Mr. Braniff, the fact remains that during that time he gave no confessions and made no incriminating statements of any kind.

After conferring with his attorney, petitioner, on December 14, 1965, withdrew his former plea of not guilty and entered a plea of guilty. When, during his habeas corpus hearing in this Court he was asked why he changed his plea, he stated that he did it "because I was guilty," and because "they had me cold," and because "I didn't have anything to fight on." He further testified that the decision to change his plea to guilty was entirely his own, and that his decision to so plead was arrived at after conferences with his attorney. Thus it is obvious from his own testimony, which, incidentally, was completely corroborated by the testimony before this Court of Judge Braniff, that there is no merit to his contention that he was forced to plead guilty under "extreme psychological coercion".

As to his claim that he was not advised of his right to counsel, little need be said after looking at his own testimony before this Court. Immediately after being booked he called his wife and asked her to get his lawyer, Mr. Braniff, to represent him. He testified that he had "been picked up a good many times" prior to this time and that on at least two previous occasions he had retained Mr. Braniff to represent him. He further testified that he knew of his right to counsel and that "I always get a lawyer when I'm picked up on a bad charge." Thus, on the merits, there is no merit to his contention that he was not advised of his right to counsel. And further, since the proceedings had against him occurred prior to the holding in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and since the rule of *Miranda* is not retroactive, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), there is no merit to petitioner's claim that he is entitled to a writ of habeas corpus because he was not advised of his right to counsel.

The evidence, as referred to hereinbefore, clearly establishes the fact that there is no merit to petitioner's contention that he was the victim of an illegal search and seizure. The search was made as an incident to a lawful arrest, and was made at the invitation of petitioner's mother-in-law who, as the owner of the premises, had the right to consent to the search being made. It was her house that was to be searched and petitioner was only a temporary occupant thereof. A search of the premises where a person is only a temporary occupant, as was petitioner in this case, cannot be objected to by such person when the consent to search is given by the owner of the premises. Maxwell v. Stephens, 348 F.2d 325 (CA 8–1965); Burge v. United States, 342 F.2d 408 (CA 9–1965); Rees v. Peyton, 341 F.2d 859 (CA 4–1965); Fredricksen v. United States, 105 U.S. App.D.C. 262, 266 F.2d 463 (1959).

The *Maxwell* case was quite similar to the present case. In that case certain evidence was seized after a search of the defendant's mother's house. There, as here, the search was consented to by the mother, who had a proprietary interest in the house. She permitted the police to search defendant's room, which he shared with his two younger brothers. In dealing with the question of consent, the Eighth Circuit Court of Appeals stated:

"What, then, is the effect of this voluntary consent on the part of Maxwell's mother? We recognize, of course, that constitutional rights are not to depend upon 'subtle distinctions, developed and refined by the common law in evolving the body of private property law'. * * * But this is not a case of property right distinctions. The defense concedes that Mrs. Maxwell possessed a proprietary interest in the house; that Maxwell himself only shared a room there with his two younger brothers; and that no landlord-tenant relationship existed between Maxwell and his parents. Mrs. Maxwell had control of the premises, undiminished by any kind of a less-than-fee interest possessed by Maxwell. This fact stands in contrast to the hotel or rental situations. * * *

"But the defense argues that this coat was Maxwell's personal effect and clothing; that it could not be picked up or acquired in any manner, even with a valid search warrant, without his consent; * * *

"Whatever force might otherwise lie in the facts that the coat was clothing personal to Maxwell (and thus presumably an 'effect' within the meaning of the Fourth Amendment), * * * this argument overlooks the consent to the officers' acquisition of the coat by a person having the proprietary interest in the premises where it was. * * It was an item which freely came into the hands of the authorities by one

who had the right to make it available to them. * * * " 348 F.2d at pages 336–338.

■ And also, it must be remembered here that petitioner himself finally voluntarily assisted in the search by showing the officers where the pistol was hidden. A search to which voluntary consent is given is not an unlawful search and any evidence thereby obtained is admissible. Frye v. United States, 315 F.2d 491 (CA 9–1963), cert. den. 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76.

■ And finally, if for no other reason, petitioner's application for habeas corpus must be denied because, when he voluntarily pleaded guilty, he waived all non-jurisdictional irregularities, if any existed, and permitted the Court to sentence him on his guilty plea. Busby v. Holman, 356 F.2d 75 (CA 5–1966). In *Busby*, the Fifth Circuit Court of Appeals stated:

"* * * It is settled by a host of authorities that a judgment on a plea of guilty which was been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all non-jurisdictional defects in the prior proceedings against him. The judgment and sentence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor."

Thus, there being no merit to any of petitioner's contentions, his application for a writ of habeas corpus must, and will be, denied, and judgment will be entered accordingly.