Sinclair **JOHNSON**, alias St. Clair Johnston

v.

Lamont **SMITH**, Warden, Georgia State Prison, Reidsville, Georgia.

Civ. A. No. 11789.

United States District Court
N. D. Georgia,
Atlanta Division.

Oct. 23, 1968.

Glenn Zell, Atlanta, Ga., for petitioner.

Arthur K. Bolton, Atty. Gen. of Ga., Mathew Robins, Asst. Atty. Gen., Marian O. Gordon, John W. Hinchey, Atlanta, Ga., for respondent.

## ORDER

EDENFIELD, District Judge.

Petitioner, a state prisoner, seeks habeas corpus, alleging various deprivations of constitutional rights. He has exhausted his state remedies. This court ordered his petition filed in forma pauperis, and issued a show cause order. The State of Georgia responded, a hearing was held, and this order is a result of that hearing.

In his application petitioner charges:

(1) Collusion between state and federal officials to force him to trial using illegally seized evidence.

(2) Denial of the rights of jury trial and appeal.

(3) That his indictment, conviction and sentence, upon a plea of guilty, were based upon and coerced by a threat to use illegally seized evidence against him.

(4) That he was deprived of counsel, in violation of the Sixth and Fourteenth Amendments.

(5) That his plea of guilty was coerced by misrepresentations of his privately employed counsel.

It is undisputed that on December 12, 1960, federal agents arrested petitioner and one Lawrence Duncan at Duncan's apartment in Atlanta and made an exploratory search of the apartment, removing many items of evidence. This evidence, it is contended, was the sole basis for petitioner's indictment, conviction and sentence on July 31, 1961, in the state court. Apparently, it was also the sole basis for an indictment against petitioner in this District. However, in that proceeding a motion to suppress was filed in this court on behalf of petitioner and was sustained, and on August 22, 1961, the charges against petitioner in this court were dismissed.

It is also undisputed that the order of this court suppressing the evidence against petitioner was signed on July 28, 1961 and entered on August 3, 1961. In the meantime, on July 31, 1961, petitioner and his co-defendant, Duncan, pled guilty to two indictments for burglary in the Superior Court of Pike County, Georgia. In that proceeding the State apparently contemplated using some of the same evidence which had been suppressed in this court. It appears, however, that the state court knew nothing of the motion to suppress in this court, or at least did not know it had been sustained. This petition presents the question whether the conduct or misrepresentations of petitioner's retained attorneys was such as to deprive him of the right to effective counsel or to coerce his plea of guilty, or whether, in either case, such conduct of petitioner's attorneys is imputable to the State in determining petitioner's right to habeas corpus relief.

At the hearing here, petitioner and his co-defendant, Duncan, testified, in substance, that upon arraignment in the state court, their attorneys, Messrs. Joe Salem and Walter Fincher, had demanded additional attorneys' fees for the state cases. This happened at about the same time that the two prisoners signed over to those attorneys all rights to all property and money (some $12,000) seized but which had not been identified as stolen. At this time neither defendants nor their counsel knew whether these funds and this property would be released (it was being claimed by persons from whom it had allegedly been stolen), and the attorneys were demanding a further cash fee in addition. A conference with family members was held, including Duncan's wife, brother, sister-in-law, and a Mrs. Pope, and it was determined that an additional cash fee was not available. On hearing this, and according to defendants' witnesses, the attorneys falsely reported to petitioner and his co-defendant that the motion to suppress filed in federal court had been overruled and that the evidence seized from the apartment would be used against the defendants.

They also testified that FBI officers familiar to defendants were present in the state court and some of the evidence from the apartment was also present. Based on these alleged circumstances and misrepresentations, petitioner says that his attorneys then advised him and Duncan to plead guilty, because if they did, the federal charges would probably be dropped, whereas if they did not, they would most surely receive the maximum 20 years for each burglary indictment, to run consecutively, and be tried on the federal charges as well. The decision was then made to plead guilty and the petitioner was sentenced to 20 years for each burglary indictment to run concurrently, not only with each other, but also with the approximately three-year remainder of an Alabama sentence which petitioner owed that state. Duncan received two concurrent 15-year sentences. Substantiating testimony was elicited from three witnesses, each of whom had been present at the state court, Lawrence Duncan's brother, Robert Nelson Duncan, and his wife, and a Mrs. Pat Pope.

The testimony of the attorney, Joe Salem (Walter Fincher, his associate in the original case, being deceased), on the other hand, was to the effect that, at the time of the arraignment in state court he had been not only aware of the decision in Mapp v. Ohio applying the federal exclusionary rule to state courts, but also was well aware that the federal court had sustained petitioner's motion to suppres; evidence; and that he had so advise petitioner and co-defendant Duncan. He further stated that he had in fact wanted to plead not guilty and try the case in order to seek an application of the principles of the Mapp decision in the Georgia courts, but that the defendants insisted on pleading guilty because they felt that it would be easier to escape from the state prison than it would be to escape from the federal prison. (It should be noted that Mr. Salem offered this last bit of information only after being first released in open court from the attorney-client relationship with petitioner.)

■ Considering petitioner's contentions in the order presented and in light of the facts, it is readily evident that there is no shred of evidence to support the charge of collusion between state and federal officials for the purpose of depriving petitioner of a constitutional right.

■ Also, petitioner's contentions that he was denied the right to jury trial and appeal and that his indictment, conviction and sentence were based on illegally seized evidence have no merit. The cases are legion that a voluntary plea of guilty, made knowingly and intelligently, raises a conclusive presumption of petitioner's guilt and serves as a waiver of all non-jurisdictional defects, such as illegal searches and seizures. See, e. g., Askew v. Alabama, 398 F.2d 825 (5th Cir., July 16, 1968); Conner v. Beto, 393 F.2d 485 (5th Cir., April 9, 1968); Busby v. Holman, 356 F.2d 75, 77 (5th Cir., 1966). Such a voluntary plea of guilty also waives a jury trial. See Townsend v. Dutton, 377 F.2d 539 (5th Cir., 1967); Busby v. Holman, 356 F.2d at 78. Further, no denial by the State of petitioner's right to appeal, either pro se or by retained or court-appointed counsel, appears on the record. In fact, it was petitioner's own failure to request court-appointed counsel for appeal after having been represented by retained counsel at arraignment that constituted a waiver of his right to counsel on appeal. See Horsley v. Simpson, 400 F.2d 708 (5th Cir., September 16, 1968); Worts v. Dutton, 395 F.2d 341, 344 (5th Cir., 1968); Harris v. Beto, 392 F.2d 191 (5th Cir., 1968). And the record demonstrates no knowledge on the part of any responsible state official of a desire by petitioner to have court-appointed counsel on appeal. Pate v. Holman, 341 F.2d 764, 775 (5th Cir., 1965). See also, Worts v. Dutton, 395 F.2d at 344, and cases cited therein.

■ Petitioner's remaining contentions simply raise the question whether his plea of guilty was voluntarily, knowingly and intelligently made. Accepting for the moment his allegations to be true, was the advice of counsel (to plead guilty) so incorrect and inadequate as to amount to a denial of the Sixth Amendment right to effective counsel, as made binding on the states by the Fourteenth Amendment?

"There is, of course, a distinction to be made between the lack of effective assistance of competent counsel and *being denied the right* to have the effective assistance of competent counsel. It is the latter that opens a judgment to challenge by habeas corpus. Here the attorney's alleged incompetence cannot be imputed to the state." Howard v. Beto, 375 F.2d 441, 442, 5th Cir., 1967 (per curiam).

The record here shows no denial of the right to effective counsel but rather shows that petitioner had retained counsel of his own choosing. Therefore, the alleged incompetence will be imputed to petitioner and not to the State, and petitioner is entitled to no relief on this ground. See King v. Wainwright, 368 F.2d 57, 59 (5th Cir., 1966).

Finally, the question arises: Assuming the truth of petitioner's allegation that his plea of guilty was coerced or induced by the fraudulent misrepresentations of retained counsel that the federal motion to suppress had been overruled rather than sustained, is this a deprivation of a constitutionally protected right under the Fourteenth Amendment? Reluctantly, the court concludes that it is not.

■■ It is axiomatic that in order for a wrong to be subject to redress under the Fourteenth Amendment it must result from state action or, at the very least, the state must have some way of knowing of its occurrence. Here, this element is completely missing. Assuming without deciding the default or even the perfidy of retained counsel, his dereliction was in no wise chargeable to the State. Had counsel been state appointed,[1] or even had the State or a state officer received the slightest notice of

1. Brubaker v. Dickson, 310 F.2d 30 (footnote 3) (9th Cir., 1962).

the alleged misrepresentation, a different question would be presented. Not only is this not the case, but the exact opposite appears. As the Fifth Circuit has said in a similar case:

> "The State of Florida and its officers have contributed in no way to what he [petitioner] complains of. The federal courts are not charged with the review of the strategy of defense adopted between an accused and his own counsel before trial in a State court." Burkett v. Mayo, 173 F.2d 574 (5th Cir., 1949).

An analogous case under the Fifth Amendment is Moore v. United States, 334 F.2d 25 (5th Cir., 1964). In determining whether or not to grant Moore an evidentiary hearing on his 28 U.S.C. § 2255 motion to vacate sentence, the Fifth Circuit Court of Appeals said that:

> " * * * (T)he trial judge could have found only that Moore was in good faith misled by misrepresentations of his own personally employed and paid counsel. * * * This showing, which is the most that an evidentiary hearing could produce, would not justify the setting aside of the plea of Guilty." 334 F.2d at 26.

This opinion lends support to the earlier *Burkett* decision. Also lending support is a line of decisions in the Third Circuit. See, e. g., United States ex rel. Wilkins v. Banmiller, 325 F.2d 514, 516 (3rd Cir., 1963), cert. denied 379 U.S. 847, 85 S.Ct. 87, 13 L.Ed.2d 51; United States ex rel. Darcy v. Handy, 203 F.2d 407, 426 (3rd Cir., 1963), cert. denied sub nom Maroney v. United States ex rel. Darcy, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375 (1953) ("When counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state."). But see Hayman v.

United States, 187 F.2d 456, 460 (9th Cir., 1951), reversed on other grounds 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232.

This is not a case where there was a trial in which the incompetence of counsel was so obvious as to make of it a farce and a mockery requiring the State to observe and correct it. See United States ex rel. Darcy v. Handy, 203 F.2d at 427. See also Anno., 74 A.L.R.2d 1390, 1403–1406(b) "Representation making the trial a farce", and the exhaustive citations contained therein; Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, 793–794 (1958), cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Odom v. United States, 377 F.2d 853, 858–859 (5th Cir., 1967); Bell v. Alabama, 367 F.2d 243 (5th Cir., 1966), cert. denied 386 U.S. 916, 87 S. Ct. 859, 17 L.Ed.2d 788 (1967).

Here, not only was there a plea of guilty with no trial, but nothing occurred which might have suggested to the court that counsel was either incompetent or corrupt, if he was.

It should be noted that the numerical preponderance of the evidence adduced at the hearing tended to prove the correctness of petitioner's contentions regarding the conduct of his counsel, and from petitioner's point of view, it doubtless seems a senseless anomaly that petitioner must be denied the writ because of the requirement that "state action" contribute to his downfall. As one court has said, "The effect upon the accused is the same whether or not the court knew [he] was improperly represented." Holland v. Boles, 225 F.Supp. 863, 866 (N.D. W.Va., 1963). To him, it may seem even more anomalous that if the trial had taken place in federal court under the Fifth Amendment, there would be no "state action" requirement.[2] But the

---

2. See Porter v. United States, 298 F.2d 461, 464 (5th Cir., 1962), where, in discussing a conflict of interest situation, Judge Brown said: "Of course such things as this should never happen, and the place to stop it is the professional conscience of the advocate involved. A Court may not countenance it and must, on the contrary,

take effective action just as we are certain the careful Judge below would have done had the facts been known at or before the commencement of the criminal trial. But where this has been allowed to occur, either through a calloused conscience of the attorney, or ignorance of the true facts by the Judge, the trial is

**840**

command we follow here is not a moral one. On the contrary, it has its origin in the express language of the Fourteenth Amendment. Upon occasion, some courts appear willing to ignore it.[3] This court has no authority to do so.

The application for the writ of habeas corpus is denied.

not the fair one demanded by the Constisution, And this is so without regard to the presence or absence of any action of a strictly governmental nature which can be ascribed to the prosecution as the transgressing agency or imputed to the trial court on traditional notions of error on the Judge's part." See also Popeko v.

United States, 294 F.2d 168, 171 (5th Cir., 1958); Floyd v. United States, 260 F.2d 910, 912 (5th Cir., 1958); Kennedy v. United States, 259 F.2d 883, 886 (5th Cir., 1958).

3. See Wilson v. Rose, 366 F.2d 611, 615–616 (1966).