211 So.2d 74 (1968)
Henry Leroy BOGAN, Appellant,
v.
STATE of Florida, Appellee.
No. 67-510.
District Court of Appeal of Florida. Second District.
May 31, 1968.
*75 John J. Duffy, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
This is an appeal by appellant Henry Leroy Bogan from an order denying without hearing petition filed under CrPR 1.850, 33 F.S.A. to vacate a previous judgment of conviction and sentence.
On December 16, 1964, Bogan was indicted in the Pinellas County Circuit Court for murder in the first degree, and on December 30, 1964, he was arraigned thereon and entered plea of not guilty. Upon trial, he was found guilty by the jury on March 31, 1965, of manslaughter, and on May 5, 1965, he was sentenced to a term of imprisonment in the State Prison. Thereafter, represented by the Public Defender, said conviction was appealed to this Court, resulting on June 15, 1966, in affirmance of the judgment appealed.[1] On September 11, 1967, defendant Bogan filed his petition in the Circuit Court under then Criminal Procedure Rule No. 1, now CrPR 1.850, to vacate the judgment and sentence. This petition was denied by the Circuit Judge without hearing on October 4, 1967, and such order of denial has been duly appealed *76 to this Court and is the subject matter of this opinion.
Inasmuch as the State did not answer the averments of the petition to vacate and the Court summarily denied the same, we must look to the grounds as contained in the petition on its face to ascertain whether or not any of such grounds showed, if true, a denial of due process of law to the defendant or deprivation of a constitutional fair trial. See Reddick v. State, Fla.App. 1966, 190 So.2d 340.
The petition relied generally for relief upon four grounds, viz: (1) introduction into evidence at the trial of a confession or "a wrongly worded involuntary incriminating statement" procured from him by unlawful means, (2) use against him at the trial of deliberately perjured testimony of four named witnesses, known to be such by the prosecutors, (3) willful withholding by the State of "material evidence" of certain witnesses for defendant which would have "constituted justified homicide", and (4) failure of his Court-appointed counsel at the trial to produce certain named witnesses in his behalf who would have established "justifiable homicide." We will analyze these grounds separately as alleged in the petition, and we might mention that we have availed ourselves of the transcript of record filed here on the previous direct appeal from the conviction, of which we may take judicial notice because it is a record of this Court.

(1) The Confession

The petition alleges that defendant was held incommunicado for days by city detectives after his arrest without being able to contact his family, friends or an attorney; that his request so to do was denied; that although he was a 17 year old minor with no knowledge of the law he was not advised of his constitutional right to have counsel; that during such incarceration he was constantly and alternately interrogated and physically beaten about the neck, head, side and stomach "by said detectives"; that one of the officers kicked him several times on his body, expectorated upon him, put a pistol in his mouth; all of which forced him to make and sign an involuntary written confession "which said confession was received in evidence against him over the timely objection of petitioner's Court appointed counsel"; and that in addition to such beatings and the additional threats that "he would get the hell beat out of him if he would not confess" he was told by the officers that he "would get kill[ed] if he would report * * * such beating to the Court or anyone."
Such charges of brutal and inhuman treatment warrant extreme condemnation  condemnation of the officers if found to be true, and condemnation of the defendant if found to be untrue. But such determination, of course, is not our prerogative. We can only concern ourselves, at this stage of the proceeding, with the law of the case. Such allegations, however ostensibly fantastic, were not denied. Therefore it is our duty, as it was also initially the trial Court's, to determine whether such accusations on their face violated constitutional rights of the defendant. Patently, they were of such serious import, unless, as stated in CrPR 1.850, "the files and records of the case conclusively show that the prisoner is entitled to no relief." Without regard to defendant's accusations of "police brutality" we uphold the lower Court in denying relief on this ground.
The transcript of testimony at the trial, as transmitted to this Court upon the former direct appeal, shows that no confession or statement against interest, oral or written, was sought to be introduced by the State. On the contrary, it shows that defendant himself, through his trial counsel, after the State rested, moved that the State Attorney be required to introduce the so-called "confession" into evidence as part of the State's case. The motion was denied, and such denial was the sole contention of error urged upon the appeal. *77 This Court held it was not error, and affirmed. So the confession, however procured, was never used against the defendant; rather he sought unsuccessfully to use it in his own behalf. In any event, the allegation that the confession "was received in evidence against him" is belied by the trial record. Incidentally, during argument at the trial upon the motion to require its introduction by the State, "the confession" was produced by the State Attorney and shows merely in substance a written signed statement by defendant exculpating him from any crime.
As to defendant's claim of not being advised he had the right to counsel, while in custody, he could show no injury because following such non-advice nothing was ever used against him. Furthermore, even if an incriminating confession had been procured and later put in evidence the "failure-to-advise" rule of Miranda[2] would not avail Bogan because his trial antedated the Miranda opinion, and under Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 882, the Miranda case was inapplicable.

(2) Willful use by the State of Perjured Testimony

The petition to vacate alleged that the State Attorney's office at the trial "knowingly, willingly and deliberately used perjured testimony of the State witnesses William Bennett, Norris Bennett, William Flowers [and] Clarence T. Rubin" to obtain a conviction. It further averred that "the perjury testimony given by the above named State witnesses related to a material matter in trial touching upon the issue of guilt and that petitioner and his counsel were unaware of the fact that [the] testimony was tainted with perjury at the time of its rendition and therefore had no opportunity to combat it at the time of the trial."
The transcript of trial testimony shows that Norris Bennett and William Flowers did not testify. But Clarence T. Rubin and William Bennett did testify as State witnesses and as to them the allegations in the petition presents a serious question. They not only testified but gave damaging evidence against defendant. The allegations were not traversed or denied by the State and there is nothing in "the files and records of the case" that refutes the averment in the petition that these latter two witnesses gave perjured testimony which was known to be such by the prosecutors. In fact, the petition goes further than merely alleging that the State knowingly "used" such perjured testimony. It alleges that "the prosecutor had deliberately engineered, coached and directed [the] State witnesses named above into willfully giving perjured testimony." Here again we are confronted with the naked question of law, namely, whether such facts, assuming them to be true, would be sufficient to warrant relief under former Rule 1.
The decisions in this State are uniform that the willful use of false testimony upon material matters from State witnesses by public prosecutors, known by the latter to be perjured testimony, is a recognized ground for relief under former Rule 1. Austin v. State, Fla.App. 1964, 160 So.2d 730; Hall v. State, Fla.App. 1964, 162 So.2d 324; Brown v. State, Fla.App. 1964, 163 So.2d 335; Wade v. State, Fla.App. 1967, 193 So.2d 459; Gammage v. State, Fla. App. 1964, 162 So.2d 529; and Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Indeed, in the last cited Napue case the U.S. Supreme Court held:
"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only *78 to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."
We emphasize again we are only passing upon a question of law, namely, the legal sufficiency of such undenied averments as a ground for relief under former Rule 1. Under the authorities aforesaid, we must hold the Circuit Court in error in denying without hearing the petition to vacate on the ground stated.

(3) Withholding Witnesses for Defendant

Ground 3 of the petition sets forth that "the State Attorney fraudulently withheld material evidence from the trial jury" by not producing "witnesses in his behalf who would, if located, give testimony that * * * the action of the petitioner constituted * * * justifiable homicide."
This ground, however, falls of its own weight, because (a) the names or identity of such supposed witnesses are not given, (b) their whereabouts at the time of trial are not stated, (c) it is not alleged that the State could locate such witnesses or have them present for trial, and (d) the specific nature of their alleged testimony is not stated, the mere averment that their testimony would have shown "justifiable homicide" being a bare conclusion. This ground therefore did not state a cause for relief under former Rule 1.

(4) Failure of Court-appointed Counsel to Produce Witnesses in Defendant's Behalf

The petition here avers that defendant gave his counsel "the names and locations of witnesses who would be able to give testimony in your petitioner's behalf" but that such counsel "on the day of trial * * * failed to produce said witnesses as promised", that therefore "his constitutional right to * * * have witnesses for his defense was denied him", and that if said witnesses had been obtained their testimony would have shown that defendant's action "was justifiable homicide."
Here again, this ground contains the same infirmities as ground (3). It is not shown that such witnesses were reasonably procurable by his counsel at the time of trial. For all it appears they may have been in Red China. Also it is not shown what their testimony would have consisted of, and the bare averment that it would have established justifiable homicide is an unsupported legal conclusion. Lastly, it is not alleged that if they had been present at the trial and had known facts which would exculpate defendant, they would have been willing to so testify.
Summing up, the order appealed from, denying without hearing the petition as a whole, must be and is reversed upon ground (2) stated above, with directions that the State respond to such ground, and if the same be denied, the Court will accord defendant a hearing thereon.
And in view of the serious, even dastardly, charges and accusations made by the sworn petition against public officials, as hereinabove summarized, we reiterate what we have recently said in Thomas v. State, Fla.App. 1968, 210 So.2d 488, about the trial Court seriously considering, if it is found after full hearing that such sworn accusations are wholly without foundation in point of fact, the advisability of instituting contempt proceedings or even causing perjury prosecution to be instituted.
Reversed.
ALLEN, Acting C.J., and HOBSON, J., concur.
NOTES
[1] Bogan v. State, Fla.App. 1966, 188 So.2d 28.
[2] Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, opinion handed down on June 13, 1966.