259 So.2d 753 (1972)
Robert Earl WILLIAMS, Appellant,
v.
STATE of Florida, Appellee. (Two Cases)
Nos. P-284, O-288.
District Court of Appeal of Florida, First District.
March 30, 1972.
Richard W. Ervin, III, Public Defender, and Michael J. Minerva, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
RAWLS, Judge.
Two cases have been consolidated. In Case No. O-288, appellant challenges a judgment of guilty and sentence of ten years for the crime of breaking and entering with intent to commit a felony. In Case No. P-284, appellant was adjudged guilty of contempt for perjury in the presence of the court and sentenced to one year.
We first consider Case No. O-288. By collateral attack, Williams contended that his plea of guilty was involuntary because of coercion by the prosecuting attorney. An opinion of this court was rendered[1] remanding the cause to the trial court "for an evidentiary hearing upon the question of whether or not the trial judge made such *754 inquiry".[2] We confess that the directions of this court were not a model of clarity.
Pursuant to our mandate, the trial judge conducted an evidentiary hearing. At the outset he announced:
"... For the purpose of this hearing, the Court has determined from a review of the record and a recollection of the circumstances at the time the defendant was sentenced that the Court did not inquire of the defendant if he was entering the plea of guilty voluntarily and had knowledge of the consequences of his plea. For the purpose of this hearing, the judgment and sentence of the Court of the defendant on the charge against him in connection with this matter is vacated and set aside. At this time the Court will hear testimony as to whether or not the plea of Robert Earl Williams to the charge against him in Case No. 1831 was made voluntarily, that he was informed adequately of the nature of the charge against him, and that he knew the consequences of entering such a plea."
Defendant objected to any further inquiry as to the voluntariness of the plea primarily upon his interpretation of our opinion. He contended that the sole issue before the trial court had already been resolved in his favor; that is, that he was not interrogated by the trial court as to the "voluntariness of his plea of guilty" prior to the adjudication of guilt.
The trial judge rejected Williams' interpretation of our mandate and commenced hearing extensive testimony surrounding the tender by defendant of his guilty plea. Succinctly, this testimony revealed that defendant's contention that his plea was coerced was without foundation and that the plea was tendered as a result of successful negotiations made by his privately-employed attorney. Williams was charged by a two-count information of: 1. Breaking and entering with intent to commit a felony; and 2. Grand larceny of two rifles, about 60 boxes of ammunition and three knives. As a result of negotiations by his attorney, the grand larceny count was nolle prossed, and Williams, after entering his plea of guilty to the first count, was placed on probation for a period of ten years. Williams testified in the instant proceeding that he was led to believe if he pled guilty he would be granted probation; that he was granted probation; and it was only after he was "railroaded" for violating probation that he contended his plea was involuntary.
A voluntary plea of guilty in a criminal case waives any defect not jurisdictional.[3] Is the litany envisioned by Criminal Procedure Rule 1.170(a) jurisdictional? Although there appears to be some division among the appellate courts in this state,[4] we hold that compliance with the rule is not jurisdictional. The fundamental issue is whether defendant at the time of tendering his plea of guilty did so knowingly and voluntarily. Voluntariness of a plea of guilty can be determined only by considering all relevant circumstances.[5] The fact that defendant was represented by competent counsel at the time he entered his guilty plea is a factor which strongly militates against a conclusion that the plea was involuntary.[6] In Kelly v. State,[7] Chief Judge Spector speaking for this court stated:
"There is yet another reason reflected in the record because of which the trial *755 court properly accepted the guilty plea. The decision in Boykin recognized the strategic aspect of a guilty plea, stating at 395 U.S. 240, 89 S.Ct. 1710, 23 L.Ed.2d 277:
`Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it.'
"The record in the case sub judice is not by any means silent on the defense strategy of tendering a guilty plea. It is quite obvious that the plea was tendered in order to procure the dismissal of the other two cases against appellant. In recognition of the quoted excerpt from Boykin, we hold that the requirements that extensive inquiries be made by the trial judge before accepting the plea are inapplicable where the record shows that the defendant was represented by counsel and that the guilty plea was the product of plea-bargaining arrangements between the State and the defendant. We implied as much in Wilson v. Wainwright [Fla.App.], 248 So.2d 249. Our sister court so held in Johnson v. State [Fla.App.], 248 So.2d 225."
This record reflects that Williams' privately-employed counsel bargained for him well in that he procured a nolle prosequi of a grand larceny count and negotiated probation for the remaining count charging a felony in return for a plea of guilty. Only after an order was entered some four months later revoking probation did Williams begin to question the voluntariness of his plea. Under the record before us, it is clear that the appellant's plea of guilty was voluntary and was made in furtherance of a properly negotiated plea resulting in probation and the abandonment of the other pending count.[8]
We now turn to Case No. P-284. In his verified motion to vacate and set aside judgment of sentence, Williams alleged as follows:
"III. On, or about, Jan. 11, 1969, the Assist. State Attorney, the Honorable Clyde B. Wells, came to the Walton County Jail to see the defendant and to coerce him into pleading guilty to the charge of breaking and entering with intent to commit a felony; Mr. Wells told the defendant that if he did not plead guilty to this charge that he, Mr. Wells, would see to it that the defendant would get 20 yrs. on each charge; but also told the defendant that if he would enter a plea of guilty to this charge, that he, Mr. Wells, would fix it with the judge that he would only get probation and that he, Mr. Wells, would dismiss the other charges against him; he also told the defendant not to say anything about this talk, to his father or his attorney, and told the defendant that he would call him along with his father and attorney to talk to him later on, in order to make it look good in the eyes of his father and attorney.
"IV. The defendant told Mr. Wells that he would do this, only if Mr. Wells guaranteed the probation and that he would drop all pending charges, Mr. Wells said he does guarantee this.
"VI. The petitioner now states that the Assist. State Attorney, the Honorable Clyde B. Wells, deprived him of due process of law, when he forced the defendant into entering a plea of guilty; a violation of the 14th Amendment as guaranteed by the Constitution of the United States."
During the evidentiary hearing Williams, after being sworn, testified that he was threatened by Mr. Clyde Wells in the "jail house" where Williams was confined; that Wells was the Assistant State Attorney at the time he threatened Williams, which was *756 around January 11, 1969; and generally reaffirmed his sworn allegations as to coercion and threats. Wells testified that he did not visit the defendant in jail; that he had not at any time threatened or coerced Williams; that he "never knew there was such a person until I was appointed Assistant State Attorney and his name came before me";[9] and that during the months of January, February and March 1969, he had no connection with the State Attorney's office; that his first connection with the State Attorney's office was as an Assistant State Attorney beginning 1 July 1969.[10] It was upon these basic facts that the trial judge determined that Williams was in contempt of his court.
The State concedes that the judgment of contempt failed to comply with Criminal Procedure Rule 1.830 and falls within the decision of Manning v. State.[11]
The trial court's judgment of conviction and sentence upon Williams' plea of guilty to the offense of breaking and entering with intent to commit a felony is affirmed.
The judgment and sentence holding Williams in contempt is reversed and remanded for further proceedings in conformity with Rule 1.830, Florida Rules of Criminal Procedure, and the cited cases.
Affirmed in part and reversed in part.
CARROLL, DONALD K., Acting C.J., and JOHNSON, J., concur.
NOTES
[1] Williams v. State, 245 So.2d 267 (1 Fla.App. 1971).
[2] Pursuant to the provisions of Rule 1.170, Florida Rules of Criminal Procedure, 33 F.S.A.
[3] Thomas v. State, 201 So.2d 834 (2 Fla. App. 1967).
[4] Cf. Laws v. State, 235 So.2d 754 (4 Fla. App. 1970).
[5] Lockhart v. State, 274 N.E.2d 523 (Ind. 1971); and Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, (1970).
[6] Beaty v. Neil, 467 S.W.2d 844 (Tenn.Ct. Cr.App. 1971).
[7] Kelly v. State, 254 So.2d 22, 24 (1 Fla. App. 1971).
[8] Reed v. State, 204 So.2d 26 (1 Fla.App. 1967); and Busby v. Holman, 356 F.2d 75 (5th Cir.1966).
[9] He further testified: "I prosecuted him (Williams) on a subsequent offense of breaking into another hardware store, but not this case."
[10] A certified copy of his commission was introduced into evidence corroborating this testimony.
[11] Manning v. State, 234 So.2d 16 (2 Fla. App. 1970); also see Breamfield v. State, 166 So.2d 484 (3 Fla.App. 1964); Bogan v. State, 211 So.2d 74 (2 Fla.App. 1968); John Wesley Mims v. State, Case No. P-446, opinion filed March 21, 1972 (1 Fla.App. 1972), not yet reported.