Grant **COOPER**, Appellant,

v.

William C. **HOLMAN**, Warden, Appellee.

No. 22592.

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1966.

Rives, Circuit Judge, dissented.

Robert E. Varner, Montgomery, Ala., Grant Cooper, for appellant.

David W. Clark, Asst. Atty. Gen., Richmond M. Flowers, Atty. Gen. of Alabama, for appellee.

Before MARIS,* RIVES and BELL, Circuit Judges.

MARIS, Circuit Judge:

The appellant, Grant Cooper, is serving a sentence of life imprisonment under a judgment entered in the Circuit Court of Mobile County, Alabama, upon a plea of guilty of murder in the first degree. He filed a petition for a writ of habeas corpus in the District Court for the Middle District of Alabama contending that he was incarcerated in violation of his constitutional rights. After an evidentiary hearing, the district court concluded that appellant had failed to sustain the burden of showing that his rights had been violated and the petition was dismissed. This appeal followed.

The facts of the case, as found by the district court, are inter alia, that shortly before midnight on November 22, 1954 the appellant was arrested by Mobile County authorities as a suspect for the murder of Larry Roger Piotrowski, who had been killed earlier that day near the City of Prichard. A warrant was not issued for the arrest of appellant until November 26, 1954. The appellant was not questioned by the authorities until about 9 P.M. on the night of November 23d when an officer of the Prichard police force confronted appellant with information he had obtained that appellant had been with Piotrowski shortly before the killing and that a bottle of drugs found near the scene of the slaying had been traced to appellant. After receiving this information the appellant readily confessed to having killed Piotrowski and thereupon requested permission to call his attorney, W. C. Taylor, of Mobile. The request was granted and appellant called his attorney, the police officers listening to appellant's part of the conversation. The appellant advised his attorney where he was, what he was being held for, and that he had admitted the slaying.

It is an undisputed fact that the appellant at the time of his arrest was, and for some time had been, an habitual drug addict. He was not furnished drugs after his arrest until sometime on No-

---

* Of the Third Circuit, sitting by designation.

vember 25, 1954.[1] On November 24th he asked for a physician and was visited in his cell by the prison physician, who has since died. No medicine or drugs were prescribed at that time. On November 25th the Prichard authorities telephoned the circuit solicitor, advising him that appellant was willing to accompany the authorities to the scene of the crime to show them where he had thrown the murder weapon. This trip was made and after returning to the jail that day the circuit solicitor, at appellant's request, called appellant's physician who spoke to appellant and prescribed dolophine which was delivered to appellant that afternoon. From that day to the time of his trial dolophine was regularly made available to appellant on prescriptions written by either his physician or other doctors. Appellant's attorney, a competent and reputable member of the bar of Mobile, made arrangements with the circuit solicitor whereby if appellant would enter a plea of guilty to the murder of Piotrowski, the solicitor would recommend to the judge and to the jury that appellant be given a life sentence rather than death by electrocution. The appellant, on May 10, 1955 in the presence of his counsel entered a plea of guilty. The trial judge accepted the plea and recommended to the jury that appellant be sentenced to the penitentiary for life. The jury so directed and this is the sentence which the appellant now seeks to have set aside.

Under these facts, the District Court found that appellant's plea of guilty was competently and intelligently made; that his confession was completely voluntary and not coerced; that the evidence did not support his contention that he was held incommunicado for four days without counsel, and that his arrest without a warrant was based upon probable cause. On this appeal the appellant contends that the district court erred in making these findings.

As we had occasion to point out in our opinion in Busby v. Holman, Warden, filed this day, 5 Cir., 356 F.2d 75, "It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all non-jurisdictional defects in the prior proceedings against him. The judgment and sentence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made." And the same applies to the other irregularities which the appellant alleges in the prior proceedings. Accordingly we may not take these allegations into account although we note that the district court, on ample evidence, found against the appellant's contentions with respect to all of them.

Our sole inquiry, then, is whether the district court erred in finding that the appellant's plea of guilty was voluntarily and understandingly made. For if it was involuntary, coerced or unfairly obtained, whether through ignorance, fear or inadvertence, it was invalid and should be set aside. Busby v. Holman, Warden, supra. It is not asserted by the appellant that his guilty plea was influenced by the existence of the confession or by his arrest without a warrant or his

---

1. His physician testified that he had been visited by appellant on the 21st or 22d of November when the latter was given a prescription for 20 cc of dolophine which was designed to last for three days.

There was testimony that the prescription number on the bottle found near the scene of the murder had been identified as the prescription number filled on the 22d and picked up by appellant.

alleged illegal detention. His contention is that his plea was induced by the promise of the circuit solicitor that he would recommend a life sentence instead of death in the electric chair.

■ In Cortez v. United States, 9 Cir. 1964, 337 F.2d 699, the Court of Appeals for the Ninth Circuit pointed out that upon such a rationale all guilty pleas would be vitiated if they were entered as a result of a bargain with the prosecutor. The court went on to say: [p. 701]

"We take judicial notice of the fact that the vast majority of those who are indicted for federal crimes plead guilty. We know, too, that in many of the cases where this occurs the plea will be to one count, or less than all counts, of a multicount indictment, or to a lesser offense than that originally charged. In a sense, it can be said that most guilty pleas are the result of a 'bargain' with the prosecutor. But this, standing alone, does not vitiate such pleas. A guilty defendant must always weigh the possibility of his conviction on all counts, and the possibility of his getting the maximum sentence, against the possibility that he can plead to fewer, or lesser, offenses, and perhaps receive a lighter sentence. The latter possibility exists if he pleads guilty * * * to the whole charge against him.

No competent lawyer, discussing a possible guilty plea with a client, could fail to canvass these possible alternatives with him. Nor would he fail to ascertain the willingness of the prosecutor to 'go along.' * * * At the same time, the lawyer is bound to advise his client fully as to his rights, as to the alternatives available to him, and of the fact that neither the lawyer nor the prosecutor nor any one else can bargain for the court. There is nothing wrong, however, with a lawyer's giving his client the benefit of his judgment as to what the court is likely to do, always making it clear that he is giving advice, not making a promise.

The important thing is not that there shall be no 'deal' or 'bargain', but that the plea shall be a genuine one, by a defendant who is guilty; one who understands his situation, his rights, and the consequences of the plea, and is neither deceived nor coerced."

We are in accord with this view. If a plea of guilty is made upon any understanding or agreement as to the punishment to be recommended, it is essential that before the trial court accepts such a plea, it must appear that the plea was in fact made voluntarily. But it does not follow that every guilty plea made on the basis of an understanding with the prosecuting attorney is void.

■ This court in Martin v. United States, (5 Cir.) 1958, 256 F.2d 345, stated: [p. 349]

" * * * So far as we know no court has held that any such concession made by the prosecution necessitates a finding that the plea was involuntary. The crucial issue appears to be whether, with all of the facts before him, including the advice of competent counsel, the plea was truly voluntary. The Supreme Court lays down no other test. The fact findings of the trial court as to the voluntariness should be reviewed on this issue on the clearly erroneous test."

Where upon review of the entire record the district court finds that the plea was voluntarily made, its finding is entitled to the same weight and respect on appeal as is any other fact determination which it is the district court's duty to make.

■ In this case, the appellant was faced with the election of going to trial for murder in the first degree, for which, if found guilty, the penalty could be death by electrocution or of pleading guilty upon the understanding that the circuit solicitor would recommend imprisonment in the penitentiary for life. This was a choice which appellant was entitled to make free of any coercion. His was the choice whether to accept the ad-

vice of his counsel to enter a guilty plea upon the assurance that he would not be sentenced to death. During the hearing in the district court appellant testified that he understood he was pleading guilty with the idea of getting a life sentence, which he stated was "what he got". The district court found that appellant realized the consequences of his act and that the plea was freely made. The record amply supports the findings of the district court in this regard.

■ Finally, it is argued that appellant's plea was not voluntary since he was still a narcotic addict at that time and was wholly at the mercy of the law officers for satisfaction of his appetite. We find this argument wholly lacking in merit. During the hearing in the district court the appellant did not suggest that his plea was induced by any threats that future dosages of narcotics would be withheld. On the contrary, his physician testified, as did the appellant, that appellant had received drugs as prescribed. His physician further testified that a man in appellant's condition, receiving the dosage of drugs he required, would be capable of intelligently defending himself in court.[2]

The evidence clearly sustains the district court's finding that the plea of guilty was entered voluntarily.

The judgment of the district court dismissing the petition for a writ of habeas is affirmed.

RIVES, Circuit Judge (dissenting).

The only real trial accorded to Cooper occurred between the time of his arrest without a warrant on November 22, 1954 and the time of his confession on November 23. From the moment of his arrest Cooper was the prime suspect, the real defendant. No one told him that he had a right to remain silent, or that any statement he made could be used against him. (R. 178, 179.) His oral confession was made to Captain Wilkes of the Prichard Police Department, who testified:

"I came in that afternoon and later on—I couldn't say exactly what time it was, but I was talking to him and I had run down the clues to the case and confronted him with them there in his cell. He wasn't brought out. That is when he told me that he had killed him. He said he deserved to die and, he said, 'you ought to give me a medal because he would have killed me up north and they would have give (sic) me a medal'." (R. 101.)

Cooper's fate having been sealed, he was permitted to call his attorney. It was then too late for the defense to be presented which Cooper futilely attempted to offer pro se in his state coram nobis hearing,[1] and reiterated with counsel in his federal habeas corpus hearing (R. pp. 176, 177). Cooper testified that the attorney he called had represented him "in the past cases" (R. 178), "he was supposed to have been a friend of mine and he never was paid to represent me." (R. 104, see also R. 190.) That testimony was not contradicted. Nonetheless, the attorney did the best he could for Cooper. Captain Wilkes testified:

"Q. Was a written confession taken down?

"A. No, sir; he told me—when I asked him did he want to make a written statement, he said his attor-

2. Following the imposition of sentence appellant was sent to Kilby prison where, it appears, he received treatment since, at the time of the hearing, he no longer required narcotics.

1. "THE COURT: Is there anything—I mean, what is it that you want to prove by this witness? What point did you want to make by it?

"MR. COOPER: Well, I appreciate it, Your Honor. Out here on the Eight Mile Creek where the law says this boy got killed, we had all been going out there shooting dope for a long period of time, a bunch of dope fiends, throwing my bottles out there, and I'm trying to prove to this Court that I have never had the opportunity before—the law said they found a bunch of my bottles out there, see. I'm trying to prove to this Court that the man got killed out there in my trap, see, and there ain't nobody seen me kill him." (R. 78.)

ney had advised him not to make any statement, and I said, 'Well, you have already made an oral statement.' He said, 'But he told me not to write anything or tell you all anything'; I says, 'All right.' " (R. 208.)

Unfortunately that advice came after Cooper had confessed. It was natural that Cooper's lawyer should then conclude that the best he could do for his client was to bargain to save his life. The prosecuting attorney testified: "I discussed settlement with Judge Taylor, naturally, as I would do with a defense lawyer, and we agreed on I would recommend a life sentence, and he entered his plea * * * ." (R. 259.) The entire proceedings in open court prior to the court's instructions to the jury and the only evidence of the care or lack of care exercised by the Judge in determining that Cooper's plea of guilty was made voluntarily are comprised in a few lines of the record (R. p. 139):

"Mr. Taylor: Just give your statement.

"Solicitor: You pleading guilty?

"Mr. Cooper: Just about. I'm pleading guilty for a life sentence, I'm withdrawing my plea of not guilty and pleading guilty for a life sentence.

"Court: He's pleading guilty Mr. Taylor?

"Mr. Taylor: Yes sir, the clerk's entering the plea right now.

"Court: Gentlemen this is an indictment by the January term * * * ."

Under the teaching of Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and their progeny, it seems clear to me that Cooper's oral confession was obtained in violation of his constitutional rights. With deference, I submit that it is wholly unrealistic to assert that Cooper's confession is not connected with his subsequent plea of guilty. If the confession was admissible, the plea of guilty was almost inevitable.

No one advised Cooper that his confession was invalid or inadmissible. That is no reflection on his attorney, for *Massiah* and *Escobedo* had not been decided at that time. It seems to me, however, that since it is now established that Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, is retrospective, *Massiah* and *Escobedo* must also be held to be retrospective. I will not collect the lower court decisions since that question will probably be settled by the Supreme Court very shortly.

The plea of guilty was induced not only by the illegal confession but by the bargain to save Cooper's life. The plea of guilty having been made upon an understanding as to the punishment to be recommended, it seems to me absolutely essential that the trial court, before accepting the plea, should make certain that the plea was in fact made voluntarily.[2] When used in that connection, "voluntarily" means more than "consciously" or "intentionally." When the circumstances are such that the choice of a false plea is a natural one, the court should determine that the plea is so voluntarily made as to furnish reliable and trustworthy testimony that the accused is in fact guilty. The question is whether the dominant motivating cause of the plea is to confess actual guilt or to reap the reward of the bargain.[3]

In the present case the brief proceeding in open court leaves no doubt as to the proper answer to that question:

"Solicitor: You pleading guilty?

"Mr. Cooper: Just about. I'm pleading guilty for a life sentence, I'm withdrawing my plea of not guilty

---

2. See Shelton v. United States, 5 Cir. 1957, 242 F.2d 101, 113; on rehearing en banc, 1957, 246 F.2d 571, 578; reversed on the Solicitor General's confession of error, 1958, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579.

3. See Shelton v. United States, supra n. 2, 246 F.2d at 579, 580; for a collection of literature on the subject of whether justice is properly a subject of bargaining, see 8 Moore Fed. Practice & Procedure, 2nd ed. ¶11.05, pp. 11–23, 11–30.

and pleading guilty for a life sentence." (R. 139.)

I would agree that a confession illegally obtained does not invalidate a plea of guilty not induced by that confession but voluntarily made. It may also be true that a plea of guilty is valid, notwithstanding a previous agreement as to the punishment to be imposed. To my mind, the validity of a judgment of conviction based upon any such plea of guilty depends upon the adequacy of the record to show a real determination by the court that the defendant intended to plead guilty because he actually was guilty and not because he had previously made an illegal confession or hoped to reap the reward of the bargain as to punishment. I think the present record is wholly inadequate to sustain such a determination. If the law required any less, there would always be the possibility or even probability that an innocent defendant might plead guilty because of a confession illegally obtained or because of his fear of the death penalty. I therefore respectfully dissent.