STUART GARVIN *vs.* COMMONWEALTH.

Suffolk.    January 3, 1967. — February 3, 1967

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* Plea, Assistance of counsel. *Constitutional Law,* Assistance of counsel, Admissions and confessions.

Sentences imposed in a criminal case after the defendant had pleaded guilty upon the advice of his counsel and without being influenced to do so by the prosecution or any judge were not open to attack on writ of error on the alleged ground of violations of the defendant's constitutional rights in connection with his arrest and a police interrogation prior to his plea.

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on June 22, 1965.

The case was reserved and reported by *Cutter,* J., without decision.

*Louis M. Nordlinger* for the petitioner.

*Richard W. Murphy,* Special Assistant Attorney General, for the Commonwealth.

CUTTER, J.    Garvin by petition for a writ of error seeks to review sentences on several of fourteen indictments.    A single justice found the facts and (in June, 1966, before the decisions in *Miranda* v. *Arizona,* 384 U. S. 436, and in *Johnson* v. *New Jersey,* 384 U. S. 719) reserved and reported the case without decision for the determination of the full court.

Garvin, then aged fifteen, was suspected of various offences in January and February in 1959, including breaking and entering and assault with intent to rape.    He was arrested on March 1, 1959, at or near his house, after several days of police surveillance.    A button found in the house of one victim matched the remaining buttons on a coat with a missing button worn by Garvin when arrested.    His mother was informed promptly of his arrest and later was told that he was to be placed with the Youth Service authorities.    In

the course of interrogation by the police, lasting one hour to two hours, he confessed to serious offences. Garvin was identified that evening by one alleged victim at her apartment, on the next morning in a police lineup by other alleged victims, and thereafter at a hospital by an alleged victim there confined. He also went to his sister's house where some pawn tickets were obtained from hiding. One of these tickets was for a watch belonging to an alleged victim.

On March 2 Garvin was taken to the earliest juvenile session of the Municipal Court in Roxbury following his arrest. There he was remanded for later hearing and decision whether to deal with him as a juvenile or to hold him for trial in the Superior Court. At that later hearing, he was represented by an experienced attorney, then associated with the Voluntary Defenders Committee. He had previously been interviewed by a member of the committee's legal staff. Upon consideration of the case by the grand jury, the indictments mentioned above were returned.

In June, 1959, Garvin (represented by counsel) was tried before a Superior Court judge sitting without a jury on seven of the indictments. He was convicted and sentenced to ten years at the Massachusetts Correctional Institution at Concord (Concord Reformatory). These sentences are not now before us for review.

In December, 1959, when represented by new counsel, he was tried upon another indictment before a different Superior Court judge and a jury. Before this sentence the judge committed Garvin for observation at the sex treatment center at Bridgewater. He was determined to be "a sexually dangerous person." Thereafter, in February, 1960, he was sentenced to a term of six to twelve years in the Massachusetts Correctional Institution at Walpole (Walpole), to take effect "forthwith and notwithstanding" the prior 1959 sentence to the Concord Reformatory. At this trial, after a voir dire examination, Garvin's confession was received in evidence as voluntary. This 1960 sentence is not now under review.

Garvin's counsel advised him to consider whether he would not do well, in the light of the evidence against him,

to plead guilty to the remaining indictments. After two continuances of the trial of two of the remaining cases and further consultation with his counsel who "conscientiously gave Garvin his best advice," Garvin in February, 1961, made pleas of guilty to most of the remaining indictments. He was given concurrent sentences (by a third Superior Court judge) of twelve to fifteen years at Walpole. These are the sentences now under review.

Garvin's petition for a writ of error and assignments of error alleged, in somewhat vague terms, violation of his constitutional rights in various respects in connection with his arrest and interrogation on March 1, 1959. The single justice heard testimony from Garvin, three police officers, and each of Garvin's attorneys.[1] Upon his findings, the foregoing statements of fact have been based. It is not contended that these findings, or those mentioned below,[2] are not warranted by the evidence.

1. It seems to us conclusive of the present case that the sentences now under review were based on pleas of guilty made by Garvin after full opportunity for consultation with his attorney. Cf. *Subilosky* v. *Commonwealth,* 349 Mass. 484, 487–488. Such pleas make irrelevant nonjurisdictional defects such as are here asserted. *Cooper* v. *Holman,* 356 F. 2d 82, 84 (5th Cir.). *Gallegos* v. *Cox,* 358 F. 2d 703, 704 (10th Cir.).[3] There was no pressure by the prose-

---

[1] Garvin in open court authorized his then attorney to waive the attorney-client privilege with respect to his discussions with his second attorney prior to his pleas of guilty.

[2] The single justice also found the facts hereafter summarized. Garvin during his interrogation was not threatened. No promises were made to induce his confession, and he made no objection to questioning. His confession reflected the officers' "reasonable understanding of, and efforts to state, what Garvin had admitted." The confession, read aloud to Garvin before he signed it, "recited that he had been fully warned." Garvin in fact had been warned, before his confession, that he was being investigated for serious offences and that the officers would testify to any statements he might make. He was not told that he was entitled to consult a lawyer but he did not ask to see one. The principal police witness was not asked whether Garvin was told that he might remain silent.

[3] See *Davis* v. *United States,* 347 F. 2d 374, 375 (9th Cir.); *Lattin* v. *Cox,* 355 F. 2d 397, 398–400 (10th Cir.); *Busby* v. *Holman,* 356 F. 2d 75, 77–78 (5th Cir.).

cution and no participation by any judge in the discussions prior to Garvin's pleas of guilty. Cf. *Letters* v. *Commonwealth*, 346 Mass. 403, 407–408. In the *Cooper* case it was pointed out (p. 84) that even an illegally obtained confession "cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made." Here, although it does not appear to be material, in addition to Garvin's confession, there were identifications and other evidence of his guilt.

· 2. The arguments and briefs covered issues other than that of the effect of the pleas of guilty. We need not discuss these issues for the authorities already cited seem to us decisive.

*Judgments affirmed.*