Victor STOVER, Petitioner,

v.

Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 68-81-E.

United States District Court
N. D. West Virginia.

Sept. 30, 1968.

J. Fred Queen, Elkins, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen., of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner is presently serving three sentences in the West Virginia State Penitentiary. On October 22, 1957, he was sentenced to life imprisonment for murder and to two not less than two nor more than ten year terms for malicious wounding. These sentences were imposed, so as to run concurrently, upon Petitioner's guilty plea to each of the three indictments. Petitioner here applies for a writ of federal habeas corpus.

After counsel was appointed in this Court, a plenary hearing was scheduled and testimony was presented, at the conclusion of which the issues of fact developed were submitted to the Court for decision.

Petitioner's first contention is that his pleas of guilty were involuntarily entered, thereby resulting in his convictions and sentences being unconstitutional. He claims that his attorney and his parents urged him to plead guilty and that he was not properly apprised of the charge against him in that he thought he was pleading guilty to second degree murder, whereas in fact he plead guilty to first degree murder.

Although not directly raised by the Petitioner, the issue also arises as to whether his plea was rendered involuntary by reason of an allegedy illegal confession previously obtained.

In Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed. 2d 473 (1962) the United States Supreme Court found that a conviction based on an involuntary plea induced by threats or promises is void and subject to attack by collateral proceedings. Explaining the far-reaching effect of a guilty plea the Court proceeded, quoting from Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927):

A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. Machibroda v. United States, supra.

Due process certainly requires that the defendant fully understands the full consequences of a plea of guilty before it can be accepted. Kercheval v. United States, supra; Bailey v. MacDougall, 392 F.2d 155, 161 (4th Cir. 1968).

Both Petitioner and his state trial court counsel testified at the plenary hearing before this Court. His counsel testified that he had access to the prosecutor's files and that after investigating thoroughly, he found no evidence of spontaniety in the shooting, and felt that no successful defense could prevent Petitioner's conviction of the first degree murder crime. Also, the prosecutor had informed Petitioner's attorney that he was going to seek the death penalty,

because of the nature of the murder case, and, that if the jury did not so find as to the murder charge he would seek convictions on the two malicious wounding charges and would recommend that all the sentences run consecutively. The prosecutor was not totally adverse to a mercy recommendation, however. Petitioner's attorney further testified that considering all the evidence it was his opinion that there was a very good chance that Petitioner would receive the death penalty. No defense was offered to the charges. For these reasons he urged, in fact pleaded with, Petitioner to enter a guilty plea, hoping he would receive a life sentence. He further testified that he believed Petitioner clearly understood that he was pleading guilty to first degree murder and could receive a life sentence.

Significantly, Petitioner, his mother, and his attorney all testified at the hearing that no one knew, except Petitioner, how Petitioner would plead until he actually appeared before the state trial judge. Although he had been persuaded by the urgings of his parents and his attorney to plead guilty, Petitioner testified that it was his own voluntary decision to plead guilty, and that when he did so he thought he would get life.

As to the effect of his allegedly illegal confession upon his subsequent guilty plea, Petitioner testified that although he was aware of the information possessed by the police, the confession he gave had no effect on his plea of guilty. Petitioner stated that he pleaded guilty because his lawyer told him that the death penalty was possible if conviction resulted from trial. This was a definite statutory possibility.

█ The case at hand is remarkably similar to Cooper v. Holman, 356 F.2d 82 (5th Cir. 1966), cert. denied 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966). In that case, and now here, after considering all the testimony, it cannot be said that Petitioner's plea of guilty was in any way involuntary. At the time he understood what was at stake—life versus a possibility of death. This choice of penalty was a factor he was entitled to make, free from any coercion. "His was the choice whether to accept the advice of his counsel to enter a guilty plea upon the assurance that he would not be sentenced to death." Cooper v. Holman, supra, at 85. There is nothing impermissible about the type of "plea bargaining" that occurred here. The prosecutor candidly laid open his files to the defense attorney and properly told him of his policy. To do less would have been an abdication of his responsibilities by the prosecutor. The plea bargaining that occurred in this case is not the type that would induce an innocent person, possessing a defense to the charge, to plead guilty. See Bailey v. MacDougall, supra, n. 7. It was Petitioner's counsel's opinion that due to eye-witnesses and the overwhelming evidence collected against Petitioner, his guilt was beyond contest. The plea bargaining was, in fact, limited to the question of punishment.

█ The weight of the evidence shows that Petitioner's guilty plea was made intelligently and voluntarily and that it was entered with full realization that he could and probably would receive a life sentence for first degree murder.

█ Petitioner alleges that there was an illegally obtained confession which violated due process. He does not allege in what way he was prejudiced, as the confession was not used. It is well settled that a plea of guilty, if voluntarily and understandingly made, as so found as a point of fact in this case, not only is conclusive of his guilt, admitting all the facts alleged, but is also a waiver of all non-jurisdictional irregularities that may have occurred in prior proceedings. Carpenter v. Wainwright, 372 F.2d 940 (5th Cir. 1967); Hughes v. United States, 371 F.2d 694 (8th Cir. 1967); United States v. Ptomey, 366 F.2d 759 (3rd Cir. 1966). "Conviction and sentence following a plea of guilty are based solely and entirely upon the

plea and not upon any evidence which may have been acquired by the prosecuting authorities." United States v. Ptomey, supra, at 760. More particularly, a voluntary plea of guilty, i. e., one given uninfluenced by a previous confession, is not rendered invalid in a case such as is here presented because the defendant had previously given a confession under circumstances that would be grounds of objection and might render it inadmissible into evidence had the defendant pleaded not guilty and proceeded to trial. Cooper v. Holman, 356 F.2d 82 (5th Cir. 1966), cert. denied 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966). Accord, Kagen v. United States, 360 F.2d 30 (10th Cir. 1966); Vicory v. Willingham, 354 F.2d 644 (10th Cir. 1965), cert. denied 384 U.S. 991, 86 S.Ct. 1896, 16 L.Ed.2d 1007 (1966).

Petitioner claims also that he was denied due process of law by the failure to award him a preliminary hearing before a justice as provided by Chapter 62, Article 1, West Virginia Code. Petitioner testified that he did not receive a preliminary hearing nor did he waive such examination.

■ A comprehensive examination of the role of the preliminary hearing in the criminal procedure in West Virginia was made in Guthrie v. Boles, 261 F.Supp. 852 (N.D.W.Va.1967), where it was held that "there is no federal constitutional right to a preliminary hearing." Id. at 854. The general rule as set out in that case is that "the absence of * * * a preliminary hearing * * * [does] not unequivocally and categorically constitute grounds for federal habeas corpus relief, where the petitioner has been properly indicted and fairly convicted, either by plea of guilty or jury trial." Id. at 853. The facts of this case fall within this rule. Moreover, one who voluntarily pleads guilty cannot later complain in a habeas corpus hearing of any lack of preliminary hearing, as these possible errors are waived by his plea of guilty. Emmett v. Balkcom, 358 F.2d 302 (5th Cir. 1966).

■ Petitioner's last contention is that he was represented by ineffective and incompetent counsel. He has not offered any evidence to sustain this charge. The testimony heretofore set forth indicates Petitioner was well and ably represented by competent counsel who sought a defense but was unable to find one, Petitioner at no time stating or even indicating that he had a defense. Petitioner sought advice from his counsel, and using his best judgment after a full and thorough examination of the case, his counsel advised him to plead guilty to first degree murder so as to be assured, so far as a prosecutor's recommendation can assure, of a life sentence. This Court deplores the untrue, unwarranted attacks of incompetence made against counsel where diligence, effort and good faith of counsel are abundantly evident, as is the case here.

It can never be said that competent counsel's efforts to find the truth in the tradition of the profession of law is amiss and incompetent in all cases save those where he finds cause to "beat the rap." Here, in the perspective of federal habeas corpus it appears, although it certainly cannot here be found, that Petitioner's principal complaint is that he was guilty of the state court charges and was so found guilty.

■ Perhaps the function of habeas corpus petitions is misunderstood by this Petitioner. Petitioner obviously feels that he has served enough of his life sentence, having been incarcerated approximately 11 years. His mother testified that she felt he had "done his duty" and should be set free. The office of the Court in federal habeas corpus is not to sit as a substitute Parole Board on the question of a convict's rehabilitation. "[F]undamentally, the function of the writ is to inquire into the legality of a person's detention," Sokol, Handbook of Federal Habeas Corpus, § 1 (1965), and not into the sufficiency of the length of a person's detention.

For the reasons set out above, Petitioner's claimed deprivations are held not to be sufficient for federal habeas corpus relief. An order will be entered denying the relief and dismissing the petition.