**UNITED STATES ex rel.
Patrick MULLEN**

v.

**C. Murray HENDERSON, Warden, Louisiana State Penitentiary.**

**Misc. No. 1055.**

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

May 15, 1970.

Sylvia Roberts, Baton Rouge, La., for petitioner.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Baton Rouge, La., for respondent.

WEST, Chief Judge.

On March 18, 1963, Patrick Mullen, who now seeks a writ of habeas corpus, was sentenced to fifteen years at Louisiana State Penitentiary for armed robbery. On March 29, 1963, he received an additional consecutive sentence of five years for burglary. He began serving his time and while at the penitentiary he became involved in a dispute with a fellow inmate, which resulted in the death of the fellow inmate. Petitioner was charged with murder, to which charge he pleaded not guilty. Before trial, on advice of his retained counsel, Gordon Goodbee, Esquire, and with the consent of the District Attorney, he changed his plea to guilty of the lesser offense of manslaughter, and on November 20, 1964, was sentenced to ten years, to run consecutively with the other sentences he was serving. Thereafter, in January of 1965, petitioner became engaged in another dispute with another inmate at the penitentiary, which also resulted in the death, by stabbing, of the other inmate. Petitioner was again charged with murder, to which charge

he pleaded not guilty. This time he was represented by court-appointed counsel, Leon Picou, Esquire, and prior to trial, on advice of counsel, and with the consent of the District Attorney, petitioner was again allowed to plead guilty to the lesser offense of manslaughter. For this offense he was sentenced on June 16, 1965, to twenty-one years, to run consecutively with the other sentences he was serving.

It is the two sentences imposed for the crimes of manslaughter that petitioner now contests. He bases his claim to relief on two grounds: (1) that his pleas of guilty in both instances were entered because of the belief that his confessions, which he contends were illegally obtained, could have been used against him at his trial, when in fact they could not have been so used, thus making his pleas, in effect, involuntary, and (2) that his pleas of guilty of manslaughter in both instances were entered only to avoid the possibility of the death sentence which, under Louisiana law, could only have been imposed by a jury after a plea of not guilty of murder and a subsequent jury verdict of guilty as charged. He bases this contention on the holding of the United States Supreme Court in the case of United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

Petitioner has exhausted his State Court remedies, having applied for habeas corpus to the proper State Courts and having been denied. In view of the excellent record built up and prepared by the Twentieth Judicial District Court for the Parish of West Feliciana, State of Louisiana, after a full and complete evidentiary hearing on petitioner's application to that Court for a writ of habeas corpus, a transcript of which has been furnished this Court, it was concluded by this Court that no further evidentiary hearing was required. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); Queor v. Lee, 382 F.2d 1017 (C.A.5–1967). All issues now before this Court have been heard and determined by the State Court, and adequate findings of fact and conclusions of law are contained in the record of that hearing. This Court has carefully studied that record and makes its findings therefrom.

We will consider first the matter of the two confessions. After each of the two incidents resulting in the death of inmates at the penitentiary, petitioner gave inculpatory statements which were in the possession of the District Attorney prior to the time his cases were set for trial. Without going into detail, suffice it to say that it is the opinion of this Court that both confessions were indeed illegally obtained from the petitioner and hence would not have been admissible at his trial. The evidence greatly preponderates in support of the conclusion that the petitioner was placed "in the hole" (solitary confinement under extreme conditions), and was held there until his confessions were obtained. But the question that must be answered is whether or not the existence of the confessions, even though illegally obtained, constituted the prime motivation for his guilty pleas.

■ The mere existence of the illegally obtained confession does not necessarily render a subsequent plea of guilty involuntary. As was stated in Busby v. Holman, 356 F.2d 75 (C.A. 5–1966):

"In this court the appellant first argues that his confession was illegally obtained because it was coerced and because he was not accorded the assistance of counsel at the time it was given. He asserts that by reason of these alleged violations of his constitutional rights his subsequent conviction on his plea of guilty was invalid. There is no merit in this contention, even if we assume that the appellant's confession was not voluntary and even if we assume further that he was required to be furnished with counsel when he was being interrogated even though he did not ask for such assistance. For the confession was not offered in evidence in view of the fact that the appellant pleaded guilty and the question of its legality is relevant

in the present proceedings only to the extent that it may have affected the voluntary character of the appellant's plea. It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all non-jurisdictional defects in the prior proceedings against him. The judgment and sentence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made." 356 F.2d at 77–78.

Even if petitioner and his counsel had thought the coerced confessions could be used at trial against the petitioner, a guilty plea entered as a consequence thereof would not necessarily be invalid. This question was presented to the United States Supreme Court in the recent case of McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), wherein the Court reversed a prior ruling of the United States Court of Appeals for the Second Circuit. The Supreme Court said:

"The issue on which we differ with the Court of Appeals arises in those situations involving the counselled defendant who allegedly would put the State to its proof if there was a substantial enough chance of acquittal, who would do so except for a prior confession which might be offered against him, and who because of the confession decides to plead guilty to save himself the expense and agony of a trial and perhaps also to minimize the penalty which might be imposed. After conviction on such a plea, is a defendant entitled to a hearing, and to relief if his factual claims are accepted, when his petition for habeas corpus alleges that his confession was in fact coerced and that it motivated his plea? We think not if he alleges and proves not more than this." 90 S.Ct. at 1447.

The Court went on to say that even if the guilty plea were entered by a defendant because of his prediction that the confession could actually be used against him at trial, nothing in such a train of events would suggest that the guilty plea, as distinguished from the confession, was an involuntary act.

"His later petition for collateral relief asserting that a *coerced* confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable." 90 S.Ct. at 1448.

The Court concluded:

"In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the grounds that counsel may have misjudged the admissibility of the defendant's confession." 90 S.Ct. at 1448.

And:

"We hold, therefore, that a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus." 90 S.Ct. at 1449.

See also Parker v. State of North Carolina, 397 U.S. 790, 90 S.Ct. 1474, 25 L.Ed.2d 793 (1970).

In the instant case petitioner, on both occasions, was represented by extremely able counsel, well versed and very much experienced in the field of criminal law. Both of these attorneys testified at the evidentiary hearing held by the State Court and it is evident from their testimony that the existence of the confessions was not the prime motivating force prompting their advice to petitioner that he plead guilty to a lesser offense than murder if permitted to do so. Both attorneys knew of the existence of the confessions, and both knew that the confessions had been illegally obtained. They also both testified that they knew an illegally obtained confession could not be introduced in evidence. Throughout the evidentiary hearing, petitioner, through his present counsel, insisted that he was not contending that he had incompetent counsel. It was agreed over and over again during the hearing that no claim of incompetency was involved.

██ The evidence in this case clearly shows that from the illegally obtained confessions, petitioner's own counsel obtained information and leads which were diligently followed up and that in both cases the attorneys concluded from their own independent investigation that they were unable to build up an adequate defense for petitioner. The record shows that every lead was checked out, including the interviewing of all potential witnesses whose names were either furnished by the petitioner or who turned up in the course of the attorneys' own investigations. The attorneys involved in this case are not amateurs. They are both experienced criminal lawyers. The record clearly supports the conclusion that they exercised their judgment and gave their advice to petitioner after thorough investigations and in the finest tradition of criminal law practice. They used the information contained in the confessions to further their independent investigations, but the existence of the confessions was clearly not the motivating force behind their advice to petitioner to plead guilty, if he could, to a lesser offense. The record in this case shows without question that the petitioner's guilty plea, in both instances, was knowingly and understandingly entered to the lesser offense of manslaughter on the advice of competent counsel, and was not in any way coerced by the existence of confessions, and this Court now so finds as a fact.

The second ground upon which petitioner contends his pleas were not voluntarily given presents graver problems. Petitioner now alleges that the only reason he pleaded guilty to the lesser offense of manslaughter in both instances was to avoid the possibility of the death sentence attendant upon a jury verdict of guilty as charged of the offense of murder. If this allegation were found, as a fact, to be true, there would have been, prior to Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), a serious question presented as to whether or not the guilty pleas entered by petitioner were, in fact, freely and voluntarily entered. The genesis of this contention is found in United States v. Jackson, 390 U.S. 570, 88 S. Ct. 1209, 20 L.Ed.2d 138 (1968). That case arose in connection with an indictment charging violation of the Federal Kidnaping Act, 18 U.S.C.A. § 1201(a), which provided, in part, that:

"Whoever knowingly transports in interstate * * * commerce, any person who has been unlawfully * * * kidnaped * * * and held for ransom * * * or otherwise * * * shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

The defendant in *Jackson* moved to dismiss the count in the indictment charging an offense under the above quoted provision of the Federal Kidnaping Act on the ground that it made "the risk of death" the price for asserting the right to jury trial and thereby impairing the free exercise of that constitutional right. The District Court agreed and de-

clared the entire act unconstitutional. But on appeal, the United States Supreme Court held that it was only the death penalty provision of the act that was unconstitutional, and since that provision of the act was severable, the remainder of the statute was valid. The Court held that:

> " * * * the infirmity of the death penalty clause does not require the total frustration of Congress' basic purpose—that of making interstate kidnaping a federal crime. By holding the death penalty clause of the Federal Kidnaping Act unenforceable, we leave the statute an operative whole, free of any constitutional objection. The appellees may be prosecuted for violating the Act, but they cannot be put to death under its authority." 88 S.Ct. 1221.

But even though the only direct holding in *Jackson* concerned the invalidity of the death sentence portion of the Federal Kidnaping Act, an indirect result of the holding was to cast doubt upon the validity of certain guilty pleas entered by defendants who choose not to go to trial. When a statute provides that the only ones who subject themselves to the death penalty are those who choose to contest their guilt before a jury, doubt is cast upon the genuineness and the voluntariness of a guilty plea entered where, under the statute, the death penalty cannot be imposed by a judge, without a jury, or on a guilty plea. The Court in *Jackson* said:

> "Under the Federal Kidnaping Act, therefore, the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die. Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of any such provi-

sion, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial.

> * * * * * *

> * * * [T]he evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right." 88 S.Ct. at 1216–1217.

The same would have to be said about the Louisiana Statutes pertaining to the crime of murder. Under Louisiana law, whoever commits the crime of murder shall be punished by death, LSA–R.S. 14:30, except that the *jury* may qualify its verdict of guilty with the words "without capital punishment" in which case the punishment is imprisonment at hard labor for life. LSA–C.Cr.P. Art. 817. But if a defendant waives his right to trial by jury, the Court cannot receive an unqualified plea of guilty in a capital case. The only way he may plead guilty to a capital offense is to plead with the consent of the District Attorney, *guilty without capital punishment*. LSA–C.Cr.P. Art. 557. Or, of course, since a verdict of "guilty of manslaughter" is responsive to an indictment for murder, LSA–C.Cr.P. Art. 814, and since manslaughter does not carry a death penalty, the defendant charged with murder may, with the consent of the District Attorney, waive a trial by jury and plead guilty to the lesser offense of manslaughter and be sentenced by the judge to a term not to exceed twenty-one years. LSA–R.S. 14:31.

Thus, under Louisiana law, the only persons charged with murder who subject themselves to the death penalty are those who insist upon their Fifth Amendment right not to incriminate themselves by pleading guilty, and who insist upon their Sixth Amendment right to trial by jury. All others, such as those who plead guilty to the charge of murder or

who elect, with the consent of the District Attorney, to plead guilty to a lesser offense such as manslaughter, are assured of not being subjected to a possible death penalty. Thus the Louisiana Statutes pertaining to murder are not unlike the Federal Kidnaping Act involved in *Jackson*. The logical conclusion to draw from this is that if the United States Supreme Court had before it the question of the validity of the death sentence as applied to the Louisiana statutory offense of murder, it would probably hold, under *Jackson*, that while the State can prosecute one for murder, it cannot, under the present state of the Louisiana statutes, impose the death sentence therefor. But since the petitioner before us here was not sentenced to death, we are not concerned with whether or not such a sentence, if imposed, would be valid, but rather with the peripheral question of whether or not *in this case* the possibility of the death sentence facing the petitioner if he contested his guilt before the jury, rendered his plea of guilty to the lesser offense of manslaughter involuntary under *Jackson* and its progeny.

Prior to *Jackson* there was no doubt as to the validity of a guilty plea to a lesser offense even though it was made for the purpose of avoiding a possible death sentence as long as the defendant made his choice voluntarily and free of coercion. Cooper v. Holman, 356 F.2d 82 (C.A. 5–1966); Cortez v. United States, 337 F.2d 699 (C.A. 9–1964). In *Cortez* the Court, in approving "plea bargaining" and in recognizing that most of those who plead guilty to federal offenses plead guilty to less than all counts and the Government then dismisses the remaining counts said:

> "The important thing is not that there shall be no 'deal' or 'bargain', but that the plea shall be a genuine one, by a defendant who is guilty; one who understands his situation, his rights, and the consequences of the plea, and is neither deceived nor coerced." 337 F.2d at 701.

In *Cooper*, the Fifth Circuit Court of Appeals said "We are in accord with this view." 356 F.2d at 85.

Then came *Jackson* in April of 1968, whose only definitive holding was that the death penalty clause of the Federal Kidnaping Act is unenforceable, but that the Government could still prosecute the defendant for violating the Act as long as the death penalty was not inflicted. *Jackson* did not pass directly upon the question of whether or not a defendant could lawfully plead guilty to a lesser offense in order to avoid the death penalty if, in fact, he did so voluntarily because he was guilty, and with full knowledge of the consequences of his act. Prior to *Jackson* there was little doubt but that this could be done, and a careful reading of *Jackson* and its progeny convinces this Court that such a plea to a lesser offense may, in any particular case, still be a valid plea even though one of the reasons for the plea may be to avoid the possibility of the death sentence. The test is not the effect of the plea, but the reason for it. It is the voluntariness of the plea and the real reason for it that must be looked at in order to determine the validity of the plea. In Alford v. North Carolina, 405 F.2d 340 (C.A. 4–1968), subsequent to *Jackson*, the defendant had been indicted for murder in the first degree, allowed to plead guilty to murder in the second degree, and sentenced to serve thirty years. North Carolina's statutes pertaining to murder and the punishment therefor are similar to those of Louisiana. In its opinion the United States Circuit Court of Appeals for the Fourth Circuit said:

> "There can be little question but that petitioner tendered his plea of guilty at a time that he was the subject of impermissible burdens condemned in the *Jackson* case.
>
> \* \* \* \* \* \*
>
> By a parity of reasoning, we think that a defendant who has pleaded guilty when charged with a capital offense in North Carolina is not necessarily entitled to post-conviction relief

as a matter of law. *Jackson* by defining what are the permissible burdens of a statutory scheme like that of North Carolina must be read, however, to hold that a prisoner is entitled to relief if he can demonstrate that his plea was a product of those burdens * * * specifically, that his principal motivation to plead guilty or to forego a trial by jury was to avoid the death penalty. * * * As we read *Jackson*, we must determine the extent to which, if at all, petitioner was moved to plead guilty because of the incentive which the North Carolina statutory scheme supplied to achieve that result." 405 F.2d at 343–347.

The Court then concluded, *from the evidence,* that as a matter of fact the defendant in that case did plead guilty *only* to avoid the death penalty and hence his plea was unacceptable. The Court found, from the evidence, that the petitioner, at all times prior to and after his plea, professed his innocence. Thus, the very truthfulness of his plea was in doubt. In accord with the reasoning in the majority opinion in Alford is Brady v. United States, 404 F.2d 601 (C.A. 10–1968) wherein the Court of Appeals said:

"The finding of the trial court that the guilty plea was not made because of the statute but because of other matters is supported by substantial evidence and is binding on us. We are convinced that the appellant voluntarily pleaded guilty." 404 F.2d at 602.

The Supreme Court granted writs in *Brady,* and in affirming the Court of Appeals, Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), went even further and held that a guilty plea entered for the express purpose of avoiding a heavier penalty does not, of itself, render such a plea invalid. The Court, in *Brady,* said:

"It may be that Brady, faced with a strong case against him and recognizing that his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty. But even if we assume that Brady would not have pleaded guilty except for the death penalty provision of § 1201(a), this assumption merely identifies the penalty provision as a 'but for' cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act." 90 S.Ct. at 1469.

The Court concluded:

"We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged. * * * Under this standard, [announced in Shelton v. United States, 246 F.2d 571, 572, n. 2 (C.A. 5—1957)] a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." 90 S.Ct. at 1470–1472.

A careful reading of the lengthy transcript of the evidentiary hearing held by the State habeas court convinces us that the defendant's guilty pleas, in both instances, to the lesser offense of manslaughter were knowingly and voluntarily made upon sound advice of competent counsel, and while the possibility of the death sentence was, of course, not overlooked, it was, nevertheless, not the prime motivation for the pleas. In both instances the petitioner's attorneys were well aware of the fact that the District Attorney had much more evidence than the illegally obtained confessions, including the evidence of eye witnesses which he intended to use at petitioner's trials. Both attorneys thoroughly investigated the respective cases, and both were convinced that they could not build up a satisfactory defense. Both attorneys testified that they knew they could not

afford to have petitioner take the witness stand in his own behalf because of his prior record. There is no evidence in the record that the petitioner ever professed his innocence to either of his attorneys. The evidence shows that neither the defense attorney nor the district attorney really felt that a death penalty would be inflicted if the petitioner was tried, and both felt that the most probable verdict was life imprisonment. With this in mind, in both instances, petitioner's attorneys bargained for a plea that would net petitioner something less than the life sentence which they were convinced he would get if his case proceeded to trial. In other words, it was just as much a motivation to avoid a life sentence as it was to avoid a death penalty. The petitioner had no satisfactory defense to the murder charges, and both he and his attorneys knew it. The result was an agreement by the district attorney to accept a plea of guilty to the lesser offense of manslaughter, which carried a maximum penalty of twenty-one years. The evidence shows clearly that all of these factors, and especially the fact that defense counsel, in both instances, knew of the damning evidence held by the district attorney, were the prime reasons for their advice to petitioner that he plead guilty to manslaughter. Petitioner has never contended that his counsel on either occasion was incompetent, nor could he, because from the evidence in this case it is apparent that he got expert advice from his attorneys. While obviously counsel in both cases were cognizant of the presence of the death sentence possibilities, there were, as the record clearly reflects, other more compelling reasons for advising the defendant to plead guilty, if he could, to the lesser offense of manslaughter. Thus, it is the opinion of this Court that the petitioner's plea of guilty to manslaughter, in both instances here involved, were knowingly, truthfully, intelligently, and voluntarily given upon advice of competent counsel, and were not the product of the impermissible burdens condemned in *Jackson*.

We are not unmindful of the fact that there has as yet been no definitive ruling as to whether or not *Jackson* is to be given retroactive effect. However, in view of the conclusions reached in this case such a determination is not essential to our holding.

For these reasons, petitioner's application for a writ of habeas corpus will be denied and judgment will be entered accordingly.